*James Knowles* v. *John McCamly et al.* O. L. BARBOUR, for the complainants; J. RHOADES, for the infant defendant. The bill in this cause was filed against J. McCamly, the surviving husband of Amy McCamly deceased, and against Frances Amy McCamly, her infant daughter, to correct an alleged error in the description of the premises in two deeds given to the complainants, executed by J. McCamly and his wife, in the life time of the latter. The facts, as stated in the bill and as ascertained by the master's report, were as follows:

*Conveyances by married women.*

In 1811 David Buck the elder became the owner in fee of lot No. 103 in West Pultney, by virtue of a conveyance from N. Warren, and continued such owner until the time of his death. He died previous to 1832, leaving his son David, and his daughter Amy, who afterwards married the defendant J. McCamly, his only children and heirs at law. In May, 1832, J. McCamly and D. Buck the younger entered into written contracts with D. Hume and J. Knowles, the complainants, respectively, to sell and convey to Hume the north one-fourth, and to Knowles the remaining three-fourths of

the premises, by the name and description of " lot number
in West Pultney township in the town of Riga,
known by the name of the Buck lot;" at the rate or price of
$25 per acre, payable at the times and in the manner in the
said conveyance specified. And by the terms of such con-
tracts the vendors were to give to the purchasers respectively
good and sufficient warrantee deeds of the premises, within
one year from the date of the said contracts, provided such
purchasers should have paid all the purchase money due up
to that time, and should make satisfactory security for the
residue of such purchase money, by mortgages on the prem-
ises or otherwise. The name of Amy McCamly was signed
to the contracts, but they were not acknowledged by her as
required by the statute to make them valid and binding con-
tracts affecting her interest in the premises agreed to be con-
veyed. Nor was there any proof produced before the mas-
ter, to whom it was referred to take proof of the facts and
circumstances stated in the bill, to show that she ever signed
such contracts. In June, 1832, H. Brewster of Riga, in the
county of Monroe, who drew the original contracts, was ap-
plied to by Buck and J. McCamly, and Hume, one of the com-
plainants, to draw deeds for the purpose of conveying the
premises to the purchasers respectively, according to the
contracts. And he drew deeds accordingly, which were exe-
cuted by Buck and by J. McCamly in his presence, and were
signed and acknowledged by Mrs. McCamly afterwards, be-
fore a commissioner of deeds in Onondaga county. But these
deeds, instead of conveying to Hume the one-fourth and to
Knowles the three-fourths of the Buck farm in Riga, pur-
ported to convey the one-fourth and the three-fourths " of lot
number one hundred and twenty-three in West Pultney
township in the town of Riga," and without any description
of the premises, indicating that lot number 103, which was
" the Buck lot in West Pultney township," mentioned in the
contracts, was the lot intended to be conveyed. This mistake
in the deeds was not discovered by the complainants until
March, 1837; previous to which time Mrs. McCamly had
died, leaving her infant daughter her only child and heir at

law, and J. McCamly had left the country and gone to Texas. David Buck, upon being applied to by the complainants, gave to them deeds of all his interest in the lot described in the contracts. The infant defendant put in a general answer, by her guardian ad litem, denying any knowledge of the allegations in the complainants' bill, and submitting her rights, in the usual form, to the protection of the court; and the bill was taken as confessed against J. McCamly, the other defendant, as an absentee. The cause was heard upon the bill, and upon the answer of the infant defendant, and upon the report of the master to whom it was referred to take proof of the facts and circumstances stated in the bill.

THE CHANCELLOR. The lot intended to be conveyed was sufficiently described in the contracts, by the description of the lot in West Pulteney township in the town of Riga, "known by the name of the Buck lot," although the number of the lot was left in blank. And if the deeds to the complainants had described it in the same manner, as the lot in that township known by the name of the Buck lot, the title would undoubtedly have passed to the grantees in those deeds, notwithstanding the mistake in the number of the lot. The evidence of Brewster, therefore, as to what took place at the time of the drawing of those deeds and the execution thereof by Buck and the defendant J. McCamly, is sufficient not only to show, as against the latter, that she had executed those contracts, but that the terms of the contracts had been complied with on the part of the complainants, so as to entitle them to conveyances according to the terms of the contracts. The complainants therefore are entitled, as against him, to a decree correcting the mistake, and requiring him to convey all his interest in the Buck lot, as tenant by the curtesy in the estate of his deceased wife. And he must also procure conveyances of the reversionary interest of his daughter in the premises, so as to perfect the titles of the complainants according to the terms of his contracts, or must pay them all damages they may respectively sustain by reason of the defect in their titles. The defendant J. McCamly, and all persons claiming title to the premises under him, must be perpet-

ally enjoined from prosecuting any suit or suits against the complainants, respectively, their heirs or assigns, to recover possession of the lands mentioned in the contracts.

But as the mother of the infant defendant did not execute and acknowledge these contracts, in the manner prescribed by the tenth section of the chapter of the revised statutes relative to the proof and recording of conveyances of real estate, so as to make them binding upon her as executory contracts for the sale of her interest in the premises, under the thirty-ninth section of that chapter, (1 *R. S.* 758, 762,) there can be no decree for a conveyance against the infant defendant, as her heir at law. To authorize a decree against a feme covert, or her heirs, for the specific performance of a contract to convey her lands, she must not only have *signed* the contract with her husband, but have also acknowledged it before the proper officer, upon a private examination, apart from the husband. It is true, a court of chancery sometimes enforces a charge created by a feme covert upon her separate estate in the hands of her trustee ; but it is upon the principle of the court that as to such a separate estate she is to be considered and treated as a feme sole, and the charge upon the estate is in the nature of an appointment of an equitable interest in the trust estate. (*Field* v. *Sowle,* 4 *Russ. Rep.* 112. *Butler* v. *Buckingham,* 5 *Day's Rep.* 496. *Wright* v. *Rutter,* 2 *Ves. jun.* 576.) But where the legal estate is in the wife, except in the case of a non-resident of the state, her deed which is not acknowledged according to the statute is a mere nullity, in equity as well as at law. And when she joins her husband in a contract to convey such estate, if she does not acknowledge the contract in the manner specified in the statute in relation to conveyances by married women, it must be considered in this court, as well as in courts of law, the agreement of the husband only. And such was the decision of the court for the correction of errors in the case of *Martin* v. *Dwelly,* (6 *Wend. Rep.* 9.)

The deeds of lot No. 123, which were executed and acknowledged by Mrs. McCamly, are no evidences of an agreement on her part to convey her interest in No. 103, the Baker

lot mentioned in the contracts. Nor is there a particle of proof in this case, that at the time she acknowledged those deeds, she supposed she was conveying her interest in the last mentioned lot. Neither the officer who took her acknowledgments, nor the subscribing witness to the previous contracts, have been examined to show what took place at the time of such acknowledgment, or that her name affixed to the contracts was in fact written by her. Although we may conjecture, that she would have executed and acknowledged deeds of the lot she really owned, as readily as she did the deeds of lot No. 123, it is impossible that any one should know that she would have done it. Therefore, if she had been competent to contract as a feme sole, there is nothing in the case that would authorize the court to make a decree against her infant daughter upon the facts as they appear in the master's report. And as the common law had rendered her incapable of conveying, or of contracting to convey, her interest in the premises in question, except by a written instrument duly acknowledged by her, and containing a proper description of the land; no state of facts which could by any possibility be established in this case will be sufficient to entitle the complainants to a decree against the infant defendants.

The bill must therefore be dismissed as to her, with costs to her guardian ad litem who has been appointed by the court to protect her rights in the suit. The decree is to be without prejudice, however, to any rights the complainants may have at law, against Buck or J. McCamly, upon the original contracts, for the damages they may have sustained by the non-fulfilment thereof, if they shall fail to obtain satisfaction for such damages under the decree against the absentee or his property in this state.