## WILLIAMS v. CUDD.

1. In 1860, a married woman had no power to convey her inheritance except under the statute and in strict compliance therewith. Where, therefore, in her relinquishment the word "inheritance" was omitted from the prescribed formula—"all her estate, interest, and inheritance"—the deed did not convey the wife's estate in the land; and upon her death intestate, her husband surviving, her children became entitled to two-thirds of this land.
2. Nor can the Court of Equity supply the omitted word, as that court cannot aid the defective execution of a power, where the power is created by statute; especially so, where the statutory power is given to married women.

Before HUDSON, J., Spartanburg, September, 1886.

This was an action for partition under the facts stated in the opinion. The Circuit decree was as follows:

The referee finds the relinquishment to be defective in the omission of the word "inheritance," but that this word ought to be supplied by the court as Eliza clearly intended that it should be there, and that the complaint should be dismissed. I wish I could agree with him, but the court cannot now, after the death of Eliza, execute for her what she failed to execute during her life—if she did fail. The law has prescribed the only mode in which a married woman could then (A. D. 1860) convey her inheritance. The courts have uniformly held that the statute of

1795 must be strictly followed or else the deed fails. There is no power in any court to amend the act or to cure defective attempts to comply with its terms; or, at all events I know of no case of such interference by the court, whilst the uniform current of decisions is that the Court of Equity will not relieve against a defective execution of this statutory power; and surely such will not be done after the death of the married woman.

Many, very many, cases of great hardship to purchasers arose from a failure to have the married woman to comply strictly with the act; but the loss has invariably fallen upon the purchaser in spite of the clearest internal evidence in the writing, that it was the intention of the parties to have a perfect relinquishment. In the present instance the intention is clear; but no equity to relief has been proved outside of this intention, and a full price paid by Wingo. The reinvestment of the proceeds in other lands is not proved.

It remains, therefore, to pass upon the sufficiency of the relinquishment. If it were an open question, I would hold it to be a substantial compliance with the act and a good relinquishment. Indeed, it seems to me to be a strict compliance, because the words, "all her interest and estate," surely would seem large enough to carry a fee or inheritance; and these words are surely "to the purport," if not in form, of the language of the act. The only omission is that of the word "inheritance." But our courts have held that word to be essential, and I can do no less. In the case of *Wingo* v. *Parker* (19 *S. C.*, page 9, *et seq.*), Justice McIver has reviewed all the authorities, and it is useless here to do more than cite that case.

It is, therefore, ordered, adjudged, and decreed, that the plaintiffs are the owners of two-thirds of said land, and the defendant of the one-third, and that he is accountable for all the rents and profits over and above the one-third actually used since the death of Eliza Bishop. It is referred to J. K. Jennings, Esq., as special referee, to take an account of these rents and profits, and also of all substantial improvements and betterments erected on said land by the present defendant, and report the same to this court. It is further ordered, that a writ in partition do issue out of this court, directed to five commissioners, to be chosen accord-

ing to the practice thereof, commanding them to make partition of the said land according to their rights as herein determined.

The defendant appealed upon the grounds stated in the opinion.

*Messrs. Bomar & Simpson,* for appellant.

*Mr. J. S. R. Thomson,* contra.

March 4, 1887. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Mrs. Eliza T. Bishop, while the wife of H. J. Bishop, was seized of a small tract of land containing 190 acres, and husband and wife agreed to sell the land to one Alexander Wingo ; and on August 20, 1860, they joined in the execution of a conveyance to him for full and valuable consideration. More than seven days after, viz., on September 7, 1860, Mrs. Bishop signed an instrument, purporting to be the relinquishment of her inheritance, which was attached to the deed, and was as follows :

STATE OF SOUTH CAROLINA. ⎱
     Spartanburg District.   ⎰

I, John W. Carlisle, notary public & *ex-off.* mag., do hereby certify unto all whom it may concern, that Eliza T. Bishop, the wife of the within named H. J. Bishop, did this day appear before me, and upon being privately and separately examined by me, did declare that she did, at least seven days before this examination, actually join her husband in executing such release, and did then, and still freely and voluntarily and without any manner of compulsion, dread, or fear, of any person or persons whomsoever, renounce, release, and forever relinquish unto the within named Alexander Wingo, his heirs and assigns, all her interest and estate of, in, or to all and singular the premises within mentioned and released. And further, said Eliza T. Bishop did declare that the within deed or conveyance was positively and *bona fide* executed at least seven days before her present examination.

her
ELIZA T. X BISHOP.
mark.

Given under my hand and seal this seventeeth day of September, A. D. 1860.

JOHN W. CARLISLE, [L. S.] Not. Pub. & Ex Off. Mag."

The purchaser Wingo went into possession, but afterwards

dying intestate, the land was sold for partition, and at that sale
the defendant, Cudd, became the purchaser and is now in posses-
sion of it.   In the meantime (1884), Mrs. Bishop died, and this
action was brought by her heirs (except her husband who survived
her) to recover from the defendant two-thirds of the land and for
partition among themselves, upon the ground, as they allege, that
the paper executed by Mrs. Bishop on the deed to Wingo, pur-
porting to be the relinquishment of her inheritance, was not such
a relinquishment as the law required, and, being absolutely void,
did not convey her estate in the land, which at her death
descended to her distributees; one-third to her surviving hus-
band, and the other two-thirds to her other heirs, the plaintiffs.
The defendant, among other things, claimed that he purchased
the land for full value, and that the relinquishment, having been
carefully prepared by a lawyer, was regular, valid, and binding;
but if not, he prayed the court to reform it, so as to make it con-
form precisely to the requirements of the statute and the intention
of the parties.

It was referred to J. K. Jennings, Esq., as referee, who took
the testimony and reported that there was nothing in the evi-
dence to show that there was any defect whatever in the execu-
tion and delivery of the deed; and that the relinquishment was in
the exact form laid down by "Thornton on Conveyancing," and
a substantial compliance in every particular with the statute of
1795, with the exception of the omission of the word "inheri-
tance."   He held, under our decided cases, that the omission was
a fatal defect, but as it was clearly a mistake, caused by taking
the form from a law book, and there could be no doubt as to
the intention of the parties, equity could and should reform the
instrument so as to conform to the terms of the law.   Upon
exceptions to this report the cause was heard by Judge Hudson,
who reversed the report of the referee, ordered the writ of par-
tition to issue, and recommitted the case that enquiry might be
make as to the rents and betterments, &c.

The defendant appeals to this court on the grounds: "I.
Because the Circuit Judge erred in not holding that the relin-
quishment of inheritance by Eliza T. Bishop, in 1860, was a
good relinquishment and that the act had been sufficiently com-

plied with.   II.   Because the Circuit Judge erred in not holding that the Court of Equity should consider that done, which was intended to be done, and that, as it clearly appeared from the evidence that Mrs. Bishop intended to relinquish her inheritance, she did in fact and in law relinquish her inheritance, and her heirs have no interest now in the land.   III.  Because the judge erred in holding that the Court of Equity has no power to so correct the relinquishment of inheritance as to make it conform to the clear intention of the parties to it.   V.  Because the judge erred in not holding that the plaintiffs, heirs at law of Eliza T. Bishop, are estopped by the conduct of their mother from claiming any part of the land in dispute.   VI.  Because the judge erred in holding that defendant was accountable for all rents and profits over and above the one-third actually used since the death of Mrs. Bishop," &c.

This is certainly a hard case.   It seems that the paper claimed to be a good relinquishment of inheritance by Mrs. Bishop, was prepared by an intelligent gentleman, a lawyer of good standing in his profession, who, in writing it, followed a form found in a law book ; that the parties were not negligent or careless, but made proper efforts to have a legal and valid relinquishment prepared and executed, and no doubt thought they had accomplished that purpose.   But the only question, which we can consider, is whether the relinquishment was actually made in conformity to the act upon the subject.   At the time this transaction took place (1860), the disability of a married woman was general. She was incapable of binding herself by deed, unless expressly authorized so to do.   The power by which a married woman could relinquish her inheritance in lands, was given by the act of the legislature, and, having no such right outside of the act, it could only be done by the authority of that act, and in the manner and to the extent prescribed by that act.   "The right of inheritance of a married woman is protected with jealous vigilance by the law.   She cannot be deprived of it, but by a scrupulous adherence to the statute providing the mode in which a married woman may part with her inheritance in lands."   *Pitts* v. *Wicker*, 3 *Hill*, 199.

It cannot be necessary now, to go into the question, whether

in this State the relinquishment of the inheritance of a married woman in 1860, which omitted the word "inheritance," was a full compliance with the act of 1795; for the authorities upon that precise point have been lately reviewed in the case of *Parker* v. *Wingo*, 19 *S. C.*, 9, where it was held expressly, that in such an instrument, "the word '*inheritance*' is *essential* under the act."

But it is strongly pressed upon us that, this being a case for partition, the extraordinary jurisdiction of equity may be invoked to consider that done which was intended to be done, and to reform the instrument by adding the word "inheritance," so as to conform to the requirements of the law. We regret to say that we know of no authority to do so, either in law or equity. If this were one of those cases in which the court may interpret executory contracts so as to effectuate the intention, there might be much force in some of the views presented in behalf of the appellant. But clearly this is not one of the cases in which the intention of the parties is a controlling consideration. The question is not what was intended to be done, but sharply what was actually done.

It is true, according to the authorities, that there are cases in which the Court of Equity will aid the defective execution of a power, provided the parties really intended to execute it, and only failed in a matter of form, and provided also that the power was created by a will, family settlement, or other similar instrument. But, as we understand it, the Court of Equity will not undertake to do so in respect to powers created by statute. "The doctrine is confined to powers created by the voluntary act of persons in wills, deeds, and settlements; it does not extend to those created and regulated by statute. The defective execution of statutory powers, in the failure to comply with the prescribed requisites cannot be aided in equity." 2 *Pom. Eq. Jur.*, § 287, and numerous authorities in note. "And, indeed, it may be stated as generally, although not universally true, that the remedial power of Courts of Equity does not extend to the supplying of any circumstance, for the want of which the legislature has declared the instrument void; for otherwise equity would, in effect, defeat the very policy of the legislative enactments." 2 *Story Eq. Jur.*, § 177, and note.

This is specially true in regard to statutory powers given to married women, who, outside of the enabling act, are entirely without capacity. "As it is incompetent to show by parol that all the requirements of the law were complied with by the officer taking the acknowledgment, it follows that a Court of Equity has no power to act upon such evidence or to correct or amend a defective certificate. The sufficiency of the acknowledgment is to be determined solely by what appears upon the certificate. 2 *Scrib. Dower*, 344, 345; *Stewart Husb. & Wife*, §§ 376, 404, and notes; *Knowles* v. *McCamly*, 10 *Paige*, 342. In this latter case it was held, that "when the legal estate is in a feme covert, her deed or contract, conveying or agreeing to convey such estate, if not acknowledged by her according to the statute, is void in equity as well as at law," &c.

The sixth exception complains that it was error to decree rents and profits for the year 1884, as Mrs. Bishop died in August of that year. It does not appear that the point was argued before the Circuit Judge, and it had better go back to the referee to be considered along with the other matters referred. In all other respects,

The judgment of this court is, that the judgment of the Circuit Court be affirmed.