MARY E. BRADLEY, Respondent, *v.* ISAAC WALKER, Appellant.

In 1846, the owners of certain lots on a street in the city of New York entered into an agreement containing mutual covenants to the effect that a strip eight feet in width of the front of their respective lots should be left open and unobstructed by buildings for an open space or court, which covenants were declared to run with the lots and to be binding upon the heirs and assigns of the parties. In an action brought by plaintiff, now the owner of one of said lots, against defendant, who owned premises of which one of said lots was a part, to restrain him from building on said strip, it appeared that at the time of the execution of the agreement S., a married woman, and her husband were seized in fee of the lot owned by defendant, it having come to her by inheritance. To prove the agreement plaintiff introduced in evidence a transcript of the record thereof, properly certified; from this it appeared that the husband and wife signed and acknowledged the execution of the agreement, but the certificate of acknowledgment did not state that she acknowledged, on a private examination apart from her husband, that she executed it freely and without any fear or compulsion from him, as then required by the Revised Statutes in order to pass any estate of a married woman. (1 R. S. 758, § 10.) The transcript was received under objection that the execution of the agreement was not proved. *Held,* that the agreement was a conveyance of real estate within the meaning of said statutes (1 R. S. 762, § 38), and so required an acknowledgment in the manner prescribed, and not having been thus acknowledged it was not entitled to be recorded as against S., and the record was no evidence against her of the execution

of the instrument and, in the absence of evidence that she ever recognized or adopted it, those who succeeded to her title were not bound thereby; that while the agreement was binding upon the husband during the joint lives of himself and wife, he could not bind the lot thereafter, and upon his death his covenant ceased to run.

S. and her husband conveyed said lot by deed containing no reference to said agreement, but subject to two party-wall agreements, which provided that the walls should begin eight feet from the street line. *Held*, that this was not a recognition of the agreement in question, nor did the deed operate as a dedication of the eight feet, as an open space or courtyard, for the benefit of the lots along the street.

Also *held*, that the record was not notice to defendant of the existence of the agreement.

No presumption that one has notice of an instrument arises from the fact that it is recorded, when it is not proper to record it.

All of the deeds in defendant's chain of title from S. and her husband were with full covenants and warranty, without any reference to said agreement. *Held*, that defendant was not chargeable with notice of the existence of the agreement simply from the fact that when he took title, the buildings upon the lots along the street were generally set back eight feet from the line thereof.

It appeared that defendant's lot is twenty-five feet wide on the street; over seventeen feet of the front was not included in the lot so owned by S., and was not in any way included in the agreement, and it did not appear that any portion thereof had ever been dedicated as a courtyard, nor did it appear that any portion of the structure complained of was upon the part of defendant's lot formerly owned by S. *Held*, that even if this part was subject to the agreement, the other portion was not, and plaintiff was not entitled to any relief.

(Argued April 19, 1893; decided May 5, 1893.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of December, 1891, which modified, and affirmed as modified, a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain defendant from constructing and maintaining, and to compel the removal of, a bow window constructed by him in front of premises owned by him on the north side of West Thirtieth street in the city of New York.

The facts, so far as material, are stated in the opinion.

*Henry Hoyt* for appellant. Seventeen feet and seven inches of the front of the premises in question can in no wise be affected by the covenants and conditions of the agreement made in 1846. (*Teft* v. *Munson,* 57 N. Y. 97; *Carpenter* v. *Schermerhorn,* 2 Barb. Ch. 314; *Martin* v. *Dewelly,* 6 Wend. 9, 14; *Clowes* v. *Vanderheyden,* 17 Johns. 114.) There was no proof of the execution of the covenant or agreement by Susan Alvord. (Code Civ. Pro. § 935; *Elwood* v. *Klock,* 13 Barb. 54; *Jackson* v. *Stevens,* 16 Johns. 14; *De Peyster* v. *Howland,* 8 Cow. 277.) Susan Alvord at the time of the making the alleged agreement, could not make an agreement, conveyance or contract with reference to the premises in question. (*Vartie* v. *Underwood,* 18 Barb. 561.) A married woman can charge her separate estate, but it must be considered in this connection what is meant by the separate estate. (Willard's Eq. Juris. 652; *Yale* v. *Dederer,* 18 N. Y. 270.) Plaintiff acquired no right of prescription. (*Parker* v. *Foote,* 19 Wend. 309.) It was error on the part of the court at trial term to grant the plaintiff an allowance of $250. (Code Civ. Pro. § 3253; *Monroe* v. *Smith,* 23 Abb. [N. C.] 275; *Coates* v. *Goddard,* 2 J. & S. 118.)

*George W. Cotterill* for respondent. The underlying and most meritorious principle in this case, and which in and by itself alone disposes of all the contentions made by the defendant, is that of dedication. (*Curtis* v. *Kusler,* 14 Barb. 521; Washb. on Ease. 112, 208, 217; *City of Indianapolis* v. *Kingsbury,* 101 Ind. 200; *Ward* v. *B., etc., Co.,* 108 id. 447; *Cupp* v. *Campbell,* 103 id. 213.) Where any one buys real estate with notice of an equity attached to it, he buys at his peril. (2 Pom. Eq. Juris. 14; *Hodge* v. *Sloan,* 107 N. Y. 245; *Whitney* v. *U. R. Co.,* 11 Gray, 363; *Brown* v. *Jones,* 23 Barb. 153; *Lewis* v. *Gollner,* 129 N. Y. 227.) The husband, Alonzo A. Alvord, had, by virtue of his marital right, the absolute and unqualified right to dispose of and to sell all the interest of his wife, until the marriage relation ceased. In other words, she had no right to the property whatever as against him during her

coverture. (*Vartie* v. *Underwood,* 18 Barb. 566 ; *Tallmadge* v.
*E. R. Bank,* 26 N. Y. 109.)   Even if a woman has not power to
bind herself by covenant personally, she has power to bind
her assignees, and her husband had the same power. (*Nor-
man* v. *Wells,* 17 Wend. 17 ; *Tallman* v. *Coffin,* 4 N. Y. 137 ;
*A. D. Co.* v. *Leavitt,* 50 Barb. 125 ; *Brown* v. *Jones,* 23 id.
153.)   The statute requiring a separate acknowledgment by
married women having been subsequently repealed, the disa-
bility was thereby removed, and thus the matter was placed
in the same situation as though the statute had never existed.
(*Blood* v. *Humphrey,* 17 Barb. 660 ; *Richardson* v. *Pulver,*
63 id. 67 ; *A. F. Ins. Co.* v. *Bay,* 4 N. Y. 10.)   A married
woman can, in equity, charge her estate by way of servitude,
as in this case, and she would be completely estopped.
(*Wilson* v. *Brown,* 2 Beas. 277; *Pilcher* v. *Smith,* 2 Head,
108; 2 Bishop on Mar. Women, § 210.)   The claim is made
by the defendant that ten feet of the front of this building is
not within the terms of the covenant, on the ground that lot
47 was partially bounded southerly by a diagonal line running
northeast, as shown by the dotted lines crossing the center of
the map opposite. This is untenable. (*Tallmadge* v. *E. R.
Bank,* 26 N. Y. 109 ; *City of Elgin* v. *Beckwith,* 10 N. E.
Rep. 558.)   The plaintiff had an absolute right to enforce his
covenant just as it was made.   Light, air and vision are just
as important, even if it became a business street. (*Lattimer*
v. *Livermore,* 6 Daly, 505.)   It is conceded that this agree-
ment was executed in 1846 by Alvord and his wife.   In 1857
they conveyed to Fielder and Ryer, who built the houses in
the same year in conformity to the covenant.   If the interest
under the agreement was real estate, or a right to an ease-
ment, there has been at least thirty-three years' adverse
possession with the knowledge and acquiescence of all the
parties. (*Ward* v. *Warren,* 82 N. Y. 265.)   A mortgagee
employing an attorney to make searches, prepare leases, etc.,
is chargeable with knowledge of a recorded conveyance,
though the fact was not communicated to him by the attorney.
The presumption is that the attorney found the record in dis-

charge of his professional duty, and the presumption becomes conclusive by the attorney's omission to testify to the contrary when called as a witness. (*Kendall* v. *Neebuhr*, 13 J. & S. 542; 14 id. 544; 87 N. Y. 1; *Acer* v. *Westcott*, 46 id. 384; *McPherson* v. *Rollins*, 107 id. 322; *Tallmadge* v. *E. R. Bank*, 26 id. 105.)

EARL, J. It is claimed by the plaintiff that in July, 1846, twelve persons, who were seized in fee of sixteen lots on the northerly side of West 30th street in the city of New York, entered into a mutual agreement with each other in writing, in which they recited that they had agreed with each other to improve their lots by leaving all such parts of the lots as were between 30th street and a line drawn parallel with the street at a distance of eight feet therefrom, as and for an open space and court, and that they had laid out and appropriated all such parts of the lots for an open space and court, to remain unobstructed forever, otherwise than by the necessary steps for entrance, verandas, balconies, platforms, pedestals, iron fence and railings connected therewith and inclosing the same, and the foundations and copings upon which said iron fences and railings should be placed; and they covenanted for themselves and their heirs and assigns that the open space and court in front of each of the lots should forever remain open and unobstructed, except as above stated. They further mutually covenanted and agreed that the covenants contained in the agreement should be, and they were declared to be, covenants running with the lots respectively and with the titles thereto, and should be equally obligatory and binding upon the heirs of the several respective parties thereto, and upon all and every person who should thereafter become the owner of any of the lots, as upon the parties who signed the agreement. Thereafter, as early as 1857, houses were built upon all the lots, and the principal front of each house was placed eight feet back from the line of the street. The plaintiff, by several mesne conveyances, has become the owner of one of the sixteen lots, now number 19 West 30th street,

and the defendant, by several mesne conveyances, has also become the owner of one of them, with some addition thereto now known as number 7. He took title to his lot in April, 1890, and thereafter commenced to construct, and did construct, two bow windows in front of his house, extending therefrom about six feet. The plaintiff, claiming that this structure was in violation of the agreement above mentioned, commenced this action to restrain the construction and maintenance thereof, and to compel its removal, and she recovered judgment, which has been affirmed at the General Term.

In her complaint she based her right of action solely upon the agreement executed in July, 1846, a copy of which she annexed to the complaint. Lots 45 and 47 designated in the agreement had prior to the execution of the agreement come to Mrs. Susan Alvord by inheritance. She became married to Alonzo A. Alvord, and they were seized in fee of the two lots, he having a freehold estate in right of his wife during their joint lives, and having no other right or interest therein. Upon the trial the original agreement, a copy of which is annexed to the complaint, was not produced, but the plaintiff attempted to prove it by a transcript of the record thereof in the register's office of the city of New York, and she produced and put in evidence a transcript properly certified by the register. From that transcript it appears that while Mrs. Alvord acknowledged the execution of the instrument, the certificate of acknowledgment does not state that she acknowledged it on a private examination apart from her husband, freely and without any compulsion from him. When the transcript was introduced, the defendant objected to it on the grounds, among others, that its execution was not proved; that it was not acknowledged by Mrs. Alvord as required by law, and that as against her the alleged agreement was not entitled to be recorded; that she, at the time of the alleged execution of the agreement, was a married woman and had no right to contract with reference to her separate property, and that Mr. Alvord had no right to make any agreement imposing a servitude upon the separate property of his wife. These objec-

tions were overruled and the transcript received in evidence, and no further or other proof was given of the execution of the agreement by Mrs. Alvord.

At common law the deed and covenant of a married woman in reference to her real estate were absolutely void, and the only way in which she could convey her real estate was by uniting with her husband in levying a fine. (*Clowes* v. *Vanderheyden*, 17 Johns. 167; *Martin* v. *Dwelly*, 6 Wend. 9.) Under the Revised Statutes which were in force in 1846, the only mode in which a married woman could convey her real estate was by a deed acknowledged in the mode prescribed by the statute, as follows:

" The acknowledgment of a married woman residing in this state to a conveyance purporting to be executed by her, shall not be taken unless in addition to the requisite contained in the preceding section, she acknowledged, on a private examination apart from her husband, that she executed such conveyance freely and without any fear or compulsion of her husband; nor shall any estate of such married woman pass by any conveyance not so acknowledged." (1 R. S. 758, § 10.) The instrument, a copy of which is annexed to the complaint, was a conveyance of real estate within the meaning of the Revised Statutes, where it is provided (1 R. S. 762, § 38), that " The term ' conveyance,' as used in this chapter, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and testaments, leases for a term not exceeding three years, and executory contracts for the sale or purchase of lands."

The instrument was entitled to be recorded only because it was a conveyance of real estate within the meaning of the statute. It was not entitled to be recorded as against Mrs. Alvord, because not properly acknowledged by her. Therefore, the record or a transcript thereof was not evidence against her of the execution of the agreement. Indeed, if the original agreement had been produced, it could not have been read in

evidence against her without proof of her signature other than that furnished by her imperfect acknowledgment. There was, therefore, a total failure of proof that Mrs. Alvord ever executed the alleged agreement, and there was not an atom of proof that she ever recognized or adopted it or acted upon it, or that she ever in any way became bound by it. (*Knowles* v. *McCamly*, 10 Paige Ch. 342.) On the contrary, the only act which it is proved she ever did in reference to this lot, after the date of that agreement, was a conveyance thereof by a deed executed by herself and husband, with full covenant and warranty, to Ryer and Fielder, on the first day of April, 1857, and that deed contained no reference to or mention of the alleged agreement. It must be inferred from the form of that deed that she did not then understand that she was bound by any covenant which in any way impaired her title to the lot or incumbered it, or restricted her right to use it as she saw fit. The plaintiff lays some stress upon the fact that in that deed to Ryer and Fielder the conveyance was made subject to the conditions of two agreements for building and maintaining party walls on the easterly and westerly sides of the lot. The party-wall agreements provided that the walls should commence eight feet back from the street line. Those agreements were not executed by Mrs. Alvord. They were executed by her husband, and were adopted and ratified by her, undoubtedly, by making the conveyance to Ryer and Fielder subject to them. But it is not a just inference from these party-wall agreements thus recognized by her that she had ever agreed or that she understood that eight feet of the lot adjoining the street were to be kept open as provided in the agreement referred to in the complaint. Much less did that deed operate as a devotion or dedication of the eight feet as a courtyard for the benefit of all the lots along the street. By the party-wall agreements Mr. and Mrs. Alvord and their successors in title to the lot were not prohibited from building on the eight feet adjoining the street, and certainly were not prohibited from putting in front of the dwelling house the structure now complained of.

It is claimed on the part of the plaintiff that the defendant became bound to recognize and maintain the courtyard in front of his house in accordance with the agreement, because he had notice of it, and, therefore, the rule of law became applicable that where any one buys real estate with notice of an equity attached to it he buys it at his peril, and becomes bound by the equity. (2 Pomeroy's Eq. Ju. 14; *Hodge* v. *Sloan*, 107 N. Y. 245.) But here there is no proof that he had notice of the agreement of 1846. There is no claim that he had actual notice, and no claim that he actually knew of the instrument on record in the register's office. But it is claimed that he had notice because his counsel had searched the records. It would be going a great way to hold that we must presume that in searching the records counsel found such an agreement, and then presume further that he communicated the information to his client. But there is no presumption that any one has notice of a paper which is not properly recorded, and here, if the defendant's attorney had found this record, he would have seen that the agreement did not bind Mrs. Alvord, and, therefore, did not affect this lot, as the record did not furnish any evidence that she had ever executed the agreement.

There is some claim made that the defendant may be charged with notice of the alleged agreement, because when he purchased he found the courtyard there in front of the houses. It is quite true that he found the houses generally set back eight feet from the line of the street. But he was not bound to know from that circumstance that there was any binding agreement in reference to the open space, and it could not be assumed that there was. In all the deeds in his chain of title from Mr. and Mrs. Alvord there was no allusion whatever to the alleged agreement, and all the deeds were with full covenants and warranty. He had a right to rely upon the covenants contained in his deed, and had no reason to suppose from anything that appeared upon his lot that there was any burden or easement in favor of other lots except as to the party walls. Indeed, as he looked at the lots at that

time he found that the houses located thereon were not uniform in style, height or material, and in the case of several of them there were structures which encroached more or less upon the eight feet.

It is, therefore, entirely clear that there is no proof of any act of Mrs. Alvord, either in writing or in any other way, devoting or dedicating the eight feet in front of her lots as a courtyard for the benefit of the other lots on the street.

But the agreement executed in 1846 bound Mr. Alvord. As husband, he owned a freehold estate in the land *jure uxoris*, and during the joint lives of himself and wife he had the right to the rents and profits, and to the use, control and management of the lot. During that time he could bind it by his contracts and agreements, and he could deal with it as if he were the absolute owner thereof, except that he could bind it only for the period of the joint lives. (2 Kent, 130, 133 ; 2 Blackstone, 126 ; *Vartie* v. *Underwood*, 18 Barb. 561.) He was undoubtedly bound by that agreement, and could have been restrained from its violation, and any purchaser from him, or from him and his wife, was also bound during his life. But he died in 1862, some years after he and his wife had made a conveyance of the lot by warranty deed. Then his agreement ceased to bind any one, and the covenants he made ceased to run. If his wife had survived him she would not have been bound by his covenants, and neither is the successor in the title who holds under her.

It is, therefore, clear, that if we assume that Mrs. Alvord owned the whole of the lot No. 7 West 30th street at the date of the alleged agreement, it would be impossible to maintain that a courtyard of eight feet had been devoted or dedicated in such a way as to bind the defendant.

But there is a further difficulty in the plaintiff's case which upon this record is insuperable. At the time of the agreement in 1847 only a portion of lot No. 7 came to the line of 30th street. At that time Mr. Anderson owned a gore in the southeast corner of what is now lot No. 7 owned by the defendant. The width of the defendant's lot is 25 feet, and

of that 25 feet fronting on the street, Anderson owned 17 feet and five inches. The gore owned by him was upon the same map upon which Mrs. Alvord's lot was numbered 47, designated as 58, and the latter lot was in no way included in the agreement of 1846. So, even if Mrs. Alvord could be held bound by the agreement of 1846, that agreement in no way touched this gore lot, No. 58. More than six years after the execution of that agreement, Mrs. Alvord purchased the gore of Anderson for $2,000; but there is no evidence of any kind that that lot was ever subject to the agreement, or that she ever intended to subject it to the agreement, or ever dedicated any portion of it for a courtyard; and it does not appear that any portion of the structure now complained of is upon that portion of the lot which she owned in 1846. Even if this lot, to the extent of seven feet and five inches on the westerly side thereof, could be subjected to this courtyard agreement, we find nothing in the evidence that could subject the other portion of the lot purchased by her of Anderson in 1853 to that agreement. It does not appear that the purchase of lot No. 58 was contemplated by Mrs. Alvord at the date of that agreement, and a serious burden, such as is claimed by the plaintiff, could not be imposed upon that portion of the present lot No. 7 without more proof than we are able to find in this record.

For all these reasons we think the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.