[Civ. No. 4550. Third Appellate District.—April 20, 1932.]

NEIL DuROSS et al., Respondents, v. SALLY TRAINOR, Appellant.

Leland J. Allen and Hugh E. Macbeth for Appellant.

Victor L. Bentson for Respondents.

PLUMMER, J.—A judgment was issued in this cause whereby the defendant was "enjoined, restrained and prohibited from entering, using or occupying Lot 10, Block 3 of the Oswald Home Tract, a Subdivision of the City of Los Angeles, County of Los Angeles, State of California, otherwise known as and called '160 E. 45th Street, of the City of Los Angeles', until March 16, 2025." From this judgment the defendant appeals.

The action is based upon a certain writing introduced in evidence, between the plaintiff and others, owners of lots and parcels of land situate in the Oswald Home tract, and other named tracts, being additions to the city of Los Angeles, in which writing it was set forth that the parties thereto covenanted, one with the other: "1. That no part or portion of any of the real estate hereinafter set forth shall be leased or rented to any person or persons other than of the White or Caucasian race, for a period of 99 years. 2. That no part or portion of any of the real estate described shall be used or occupied, or permitted to be used or occupied, by any person other than of the White or Caucasian race."

Prior to the beginning of this action the record shows that the defendant had been the owner and an occupant of lot 10 in block 3 of the Oswald Home tract, for a period of about twenty-eight months, and that lot 11, adjoining lot 10, had been owned and occupied by a member of the colored race for more than fifteen years. The lots mentioned in the agreement to which we have referred do not constitute a solid mass, and are separated by unrestricted lots, and also include lots in other than block 3.

Upon this appeal it is contended that the agreement referred to does not sufficiently identify the property, in that there is no statement of the county, city or state in which the respective lots are situate; that it does not restrict a solid mass or block of lots, but attempts to restrict for ninety-nine years, lots interspersed with unrestricted lots; that the agreement contains no date, and no phrase stating or indicating when the ninety-nine years begins or when it ends. The contention is also made that the agreement was not properly acknowledged so as to entitle it to be recorded.

It is further contended that the provisions of the agreement are unconstitutional and void, as being contrary to the provisions of the federal Constitution, in that it attempts to prevent a Negro citizen of the United States from occupying and using land of which such person is the owner. A considerable portion of the appellant's brief is made up of argument and citation of authorities in support of this contention. From the views hereinafter set forth, it is unnecessary for us to express an opinion upon this question.

As to the contention that the agreement fails to state a time for the beginning of the ninety-nine year period, or a date for its ending, it must be admitted that there is nothing in the agreement or writing set forth in the transcript indicating either the time for the beginning or the ending of the ninety-nine year period. The court adopted the date of the recording of the writing as the date for the beginning of the ninety-nine year period. As between the parties, we do not very well perceive any basis for the adoption of the date of recording of the writing for the beginning of the ninety-nine year period. If it began at all, it began at the time of the signing of the instrument, if the instrument itself is valid. But from the views hereinafter expressed it is unnecessary to pass upon the question whether the failure of the parties signing the agreement to fix a time for the beginning of the ninety-nine year period, renders it ineffective.

As to the property involved in this action, the description is contained in one line and reads as follows: "Martha M. Young, 160 E. 45 St., Lot 10, Block 3. Oswald Tr." Other lots referred to in the agreement are similarly described. No city, no map of any city, no county and no state are mentioned to locate the lot referred to. The complaint in the action, however, alleges that the property referred to in the writing is situate in the city and county of Los Angeles, and is not denied in the answer. This being true, we need not give further attention to the indefinite description of the property involved.

If the agreement set out in the transcript were otherwise binding upon the defendant, the first restriction set forth therein would necessarily have to be held void by reason

of it being in violation of the statute restraining alienation. This has been definitely determined in the case of *Title Guarantee & Trust Co.* v. *Garrott,* 42 Cal. App. 152 [183 Pac. 470], and the cases following the holding had therein. The only question that would otherwise be left for our consideration would be the distinction drawn in the case of *Wayt* v. *Patee,* 205 Cal. 46 [269 Pac. 660], between conditions in restraint of alienation and conditions in restraint of occupancy. However, we need not follow the argument of the appellant or the reasons set forth why in this case restraint against occupancy should be held void the same as restraint against alienation, as from what we are about to say there is nothing in the agreement binding upon the appellant.

The court found in finding number 5 that the agreement signed by the plaintiffs and other land owners was properly recorded in the office of the county recorder of Los Angeles County, prior to the purchase of lot 10 in block 3 by the defendant, and that the defendant had constructive notice thereof. The court also found that the appellant was personally notified that said lot was restricted against the occupancy of other than Caucasians. This finding is challenged by the appellant, and we think is well taken. The court also found that all of the property immediately adjacent to and surrounding lot 10, except lot 11, in block 3, of the Oswald Home tract, is restricted against the use or occupancy of non-Caucasians. It is sufficient to say that this finding is not supported by the testimony. The agreement mentions only lots 6, 7, 8, 9, 10 and 12, of block 3. The transcript shows that there are twenty-two lots in the block.

The court also found that lot 11 in block 3 of the Oswald Home tract had not been owned or occupied by colored people for the fifteen years preceding the beginning of this action. This finding is contrary to the undisputed evidence. The testimony of a witness by the name of Allen shows that lot 11 in block 3 has been owned and occupied by colored people ever since some time during the year 1913, and this testimony is wholly uncontradicted. This finding, however, in and of itself, we would not think material, nor do we consider the fact that a number of

lots in block 3 are not shown to be restricted. In this particular we may state that oral testimony was admitted over the objection of the appellant, that many of the other lots in block 3 were restricted; but no attempt was made to introduce any agreements showing such restrictions. Consequently, any conclusion that such lots were covered by restrictions is not supported by competent testimony.

The vital defect as shown by the record in this cause is that the agreement signed by the respective lot owners was not entitled to record, and there is no pretense that the contents of the agreement was brought home to the appellant prior to her purchase of the property. All that appears in the record is that a witness by the name of DuRoss testified that about the time the appellant was negotiating for the purchase of the lot, he told her it was restricted against the use of any but people of the Caucasian race. No intimation was given that any such agreement had been entered into, or that any such agreement was of record in the recorder's office nor was any explanation made to her of its contents.

The record shows the agreement bears the names of twenty-three persons, only two of whom acknowledged the same. Neither one of these persons stands in the line of grantor to the appellant. After the names of the twenty-three persons had been affixed to the agreement, it appears that one Neil DuRoss went before a notary public and purported to acknowledge the same. The certificate of the notary is as follows: "State of California, County of Los Angeles. On this 16th day of March, A. D. 1926, before me, F. C. Watson, a notary public in and for the County and State, residing therein, duly commissioned and sworn, personally appeared Neil DuRoss, witness to all of the signatures herein signed, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same. In witness whereof I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written. (Signed): E. C. Watson, Notary Public," etc. There is not one word of actual proof of the signing of the agreement by the persons therein named.

Section 1161 of the Civil Code provides that in such cases, in order to entitle the instrument to record, there must be proof that the subscribing witnesses actually signed the same. DuRoss was one of the signers, and, therefore, his acknowledgment that he executed the instrument binds only himself, and goes no further. Meeting this objection, the respondent calls our attention to the amendment of section 1207 of the Civil Code, approved May 14, 1927, wherein it is provided that where there is a defect in the execution of the instrument, or in the certificate of acknowledgment, or the absence of such certificate, and the instrument has been of record one year, notice is imparted to subsequent purchasers, etc. This amendment, however, did not take effect until after the transactions herein referred to had been consummated and the appellant had become the owner of lot 10 in block 3 of the Oswald Home tract. The section of the Civil Code as it stood prior to the amendment referred only to instruments defectively executed prior to the year 1921.

This court, in the case of *Bell* v. *Sage*, 60 Cal. App. 149 [212 Pac. 404, 406], in a case where an instrument had been recorded without proof or acknowledgment, held that constructive notice was not thereby given to subsequent purchasers, etc. The court likewise held that an effective execution or attestation by one grantor could not supply the lack of execution or attestation by another grantor, but that grantees of a grantor who had not acknowledged the instrument or whose signature had not been properly proved was not bound by the contents of the instrument. A hearing of this case was denied by the Supreme Court. The opinion prepared by Presiding Justice Finch is so complete and well fortified by authorities that we take therefrom the following excerpt and adopt it as the basis of this opinion: ''Section 1161 of the Civil Code provides: 'Before an instrument can be recorded . . . its execution must be acknowledged by the person executing it.' Of course the singular includes the plural, and where there are several grantors the acknowledgment of one of them is effective only as to his own grant and not as to those of the other grantors, in the absence of special statutory provision, and the record thereof is constructive notice only of the conveyance of the

one who made the acknowledgment. (Webb on Record Titles, sec. 58.) All of the decisions cited or discovered, with the exception of the early Massachusetts cases, support the rule as stated by the author. The statute of Illinois, relating to chattel mortgages provides that 'such instruments shall be acknowledged before a justice of the peace or the county judge where the mortgagor resides.' In *Snite* v. *Gehrke,* 189 Ill. App. 382, the court held that 'where a chattel mortgage is not acknowledged by one of the mortgagors, it will not be effective as against the claim of a third party'. In *People* v. *Donegan,* 226 N. Y. 84 [123 N. E. 71], four persons executed a deed and all acknowledged it, but the acknowledgment of one of them was defective. The law provided that 'a conveyance may be recorded on being duly acknowledged by the person executing the same'. The court said: 'As to the grantor whose acknowledgment was defective, the record would not be notice to subsequent purchasers.' In *Lancaster* v. *Flowers,* 198 Pa. 614 [48 Atl. 896], it was held that 'a deed by W. and wife of his property, acknowledged by her, but not shown by it to have been acknowledged by him, is not good as against a subsequent purchaser for value, without notice'. In *Hall* v. *Redson,* 10 Mich. 21, in construing a statute requiring two witnesses to the execution of a deed to entitle it to record, the court said: 'We are all of opinion . . . that when a deed from several grantors is recorded, as to only a part of whom it is properly executed and witnessed, the record can only be evidence of the deed as to those parties by whom it has been properly executed, and whose execution of it has been duly witnessed so as to entitle it to record had they been the only grantors named. In other words, a defective execution or attestation as to one grantor, cannot be aided by a perfect execution and attestation as to other parties. To hold otherwise would be to defeat the manifest object of the registry laws, and to open a wide door to fraud.' (See, also, *Bradley* v. *Walker,* 60 N. Y. Super. Ct. 324 [17 N. Y. Supp. 383]; 138 N. Y. 291 [33 N. E. 1079]; *Coal Creek Min. Co.* v. *Heck,* 15 Lea (83 Tenn.), 497; *Duke* v. *Markham,* 105 N. C. 131 [18 Am. St. Rep. 889, 10 S. E. 1017]; and *Sanders* v. *Pepoon,* 4 Fla. 465.)'' This case is supported by a like

holding had in *Keese* v. *Beardsley*, 190 Cal. 465 [26 A. L. R. 1538, 213 Pac. 500]. It necessarily follows that the court erred in admitting the agreement to which we have referred, known as plaintiff's exhibit No. 2, in testimony, and also in holding that the instrument constituted constructive notice. Nor can the deed of conveyance under which the appellant claims, be held to give notice of the contents of any instrument not entitled to record.

In view of the errors which we have just pointed out, it is unnecessary for us to consider the question presented and argued at length, that equity will not do a vain thing and uphold an injunction in a case where the circumstances show that the block or district involved is not wholly restricted in its occupation, to members of the Caucasian race; in other words, that it would be inequitable to uphold an agreement providing for restricting the occupation of certain lots in a block to the Caucasian race, while the occupancy of other lots in the same block is not so restricted. Nor do we need to answer the contention of the appellant that if ownership is a constitutional right, occupancy is also a constitutional right. Nor need we further consider the contention that the ninety-nine years mentioned in the writing admitted in evidence has neither beginning nor ending designated therein. Neither is it necessary for us to consider the fact that the appellant had owned and occupied lot 10 in block 3 for more than two years prior to the commencement of the action, and therefore the plaintiff should be held estopped by reason of laches, as what we have said heretofore is determinative of this case.

The judgment is reversed.

Thompson (R. L.), J., and Preston, P. J., concurred.