ASA PUTNAM, Respondent, v. GLEN BROTEN and John Broten, and H. E. Tillberg, Appellants, and NORTHERN & DAKOTA TRUST CO., a Corporation, et al., Respondents.

(232 N. W. 749.)

98

Opinion filed October 21, 1930.

*Sad & Duffy* and *A. P. Paulson,* for appellants.

*Shure & Murphy,* for respondents.

CHRISTIANSON, J. This is an action to determine adverse claims to a quarter section of land in Griggs County in this state. The ultimate question involved is one of priority of mortgages. All rights asserted in the suit are predicated upon certain mortgages executed by the defendant John Broten, who, it is admitted, became the owner in fee of the premises in question on June 29, 1921, by virtue of a warranty deed, executed and delivered to him by the then owner. Three mortgages are involved and give rise to the questions in controversy here.

The first mortgage was executed by John Broten and his wife to the State Savings Bank of St. Paul, Minnesota, on November 1, 1920, for the sum of $2,000. On November 8, 1924, the State Savings Bank assigned this mortgage to the defendant Tillberg but the assignment was not recorded until January 30, 1928. In the meantime, to-wit, on October 5, 1926, the State Savings Bank executed a satisfaction of said mortgage, which, on the 8th day of October, 1926, was duly recorded in the office of the register of deeds of Griggs County. It is upon this mortgage that the defendant Tillberg predicates his claims in this case. He asserts that the State Savings Bank was without authority to satisfy the mortgage; that the satisfaction was obtained

from it through mistake or fraud; that the debt secured by the mortgage is unpaid and that the mortgage remains a valid lien upon the land.

On October 2, 1922, the defendant John Broten and his wife executed a second mortgage upon the premises to the Midland National Bank of Minneapolis to secure the payment of the sum of $850. This mortgage was duly recorded and thereafter on November 26, 1923, the Midland National Bank assigned this mortgage to the defendant Tillberg. On October 21, 1926, Tillberg in turn assigned the mortgage to one H. C. Aamoth. Aamoth thereafter foreclosed the mortgage by action instituted by him as plaintiff against John Broten and his wife as defendants. Decree of foreclosure was entered, special execution issued, and on January 9, 1928, the premises were sold at execution sale to the defendant Glen Broten who duly received a sheriff's certificate of sale. No redemption was made from such sale and on February 15, 1929, a sheriff's deed was issued to the defendant Glen Broten. The title asserted by the defendant Glen Broten in this action is based solely upon the sheriff's deed so issued to him upon the foreclosure of such second mortgage.

On October 18, 1922, the defendant John Broten and his wife gave a third mortgage upon the premises to the Security National Bank of Fargo to secure the sum of $5,700. On October 18, 1926, the Security National Bank assigned this mortgage to said H. C. Aamoth. The assignment was duly recorded and on December 9, 1926, Aamoth instituted proceedings to foreclose this mortgage by advertisement. On January 27, 1927, the premises were sold at such foreclosure sale to said H. C. Aamoth, and a sheriff's certificate of foreclosure sale was duly issued to him. On August 1, 1927, said Aamoth assigned such sheriff's certificate of sale to one A. C. Bjerken. Such assignment contained a specific stipulation to the effect that Aamoth was the owner of the prior mortgage upon the premises given to the Midland National Bank of Minneapolis; that such mortgage was a lien prior to the mortgage upon which the sheriff's certificate was issued to Aamoth and that Aamoth waived the lien of such prior mortgage, that is, he waived the priority of the mortgage given by Broten and his wife to the Midland National Bank and assigned by it to Aamoth. Aamoth further expressly agreed that the lien of such mortgage should be postponed and

become subsequent to the lien of the mortgage upon which the sheriff's certificate of sale was issued so that the holder of said sheriff's certificate should have a lien on the premises prior and superior to that of the lien of the mortgage assigned by the Midland National Bank to Aamoth and then owned by him, "notwithstanding that the said mortgage was recorded in the office of the register of deeds at a time prior to the recording of the mortgage which was foreclosed and upon the sale of which" the certificate of sheriff's foreclosure sale was issued. No redemption was made and on February 28, 1928, Bjerken received a sheriff's deed upon the sheriff's certificate. On January 10, 1929, Bjerken and his wife conveyed the premises to the plaintiff Asa Putnam by warranty deed. Prior to such conveyance Bjerken and his wife had given a mortgage upon the premises to one Sanders for $6,000. After the title had been conveyed to Putnam, he gave a mortgage for $6,000 to the defendant Northern & Dakota Trust Company. This mortgage was given to retire the mortgage given to Sanders, and the Sanders mortgage was duly satisfied. The title asserted by the plaintiff Putnam rests upon the warranty deed which he received from Bjerken, and Bjerken's title in turn rests upon the sheriff's deed issued to him upon the foreclosure of the third mortgage. The claim asserted by the Northern & Dakota Trust Company is the $6,000 mortgage executed to it by Putnam. The defendants, Daniel and Louis Larson, claim a leasehold interest for the years 1928 and 1929 under a farm contract executed by them and Bjerken in April, 1928.

The plaintiff Putnam instituted this action March 23, 1929, against Glen Broten and John Broten. The complaint contains the usual averments of a complaint in a statutory action to determine adverse claims. Some time after the institution of the action, pursuant to the order of the trial court, H. E. Tillberg, the Northern & Dakota Trust Company, the Security National Bank of Fargo, Louis Larson and Daniel Larson, were brought in as additional parties defendant.

The defendants John and Glen Broten answered alleging that Glen Broten is the owner in fee and entitled to the possession of the premises by virtue of the sheriff's deed executed to him upon the foreclosure of the second mortgage. They further alleged that the defendant Tillberg is the owner of the first mortgage upon the premises (which mortgage is particularly described); that the satisfaction of such mortgage

executed by the State Savings Bank was obtained by the Security National Bank of Fargo or H. C. Aamoth, one of its officers, with knowledge that such mortgage had been assigned to Tillberg and that the making, securing and recording of said satisfaction was without the knowledge or consent of said Tillberg and hence fraudulent and void.

The defendant Tillberg answering admitted that the defendant Glen Broten was the owner of the premises and alleged that he, the said Tillberg, was the owner of a first mortgage thereon, to-wit, the mortgage for $2,000 executed by John Broten and his wife, to the State Savings Bank of St. Paul, Minnesota, and by it assigned to Tillberg. He further alleges that the State Savings Bank had no right or authority to satisfy the mortgage and that the Security National Bank of Fargo, through its manager, H. C. Aamoth, "by inadvertence and mistake and misrepresentation and fraud, secured a pretended satisfaction of said mortgage from the said State Savings Bank of St. Paul, Minnesota, at a time when the said H. C. Aamoth . . . well knew that the said State Savings Bank of St. Paul, Minnesota, had no right, title or interest to said mortgage and that the said mortgage was the property of said Tillberg."

The other defendants, namely, the Security National Bank of Fargo, the Northern & Dakota Trust Company, Louis Larson and Daniel Larson, answering admitted the title of the premises to be in the plaintiff, Putnam, and asked that the same be quieted as against Glen Broten and John Broten subject to the lien of the mortgage held by the Northern & Dakota Trust Company and to the lease held by the defendants, Louis Larson and Daniel Larson.

The case was tried to the court without a jury. The trial court made findings in favor of the plaintiff Putnam and the Northern & Dakota Trust Company and concluded as a matter of law that the plaintiff Putnam was the owner in fee of the property in question free from all claims of the defendants, Broten, Tillberg and Security National Bank, but subject, however, to the first mortgage lien in favor of the Northern & Dakota Trust Company in the sum of $6,000. Judgment was entered accordingly and the defendants, Glen Broten, John Broten and Tillberg, have appealed and demand a trial anew in this court.

The case naturally divides itself into two parts: (1) The contro-

versy between the plaintiff and the defendant Glen Broten as to the ownership of the premises; and (2) the controversy between the plaintiff and the defendant Tillberg as to whether the $2,000 mortgage (which was satisfied by the State Savings Bank) is a lien upon the premises.

(1) Appellants advance the argument that upon the foreclosure of the third mortgage, Aamoth purchased the premises subject to the second mortgage for $850 (then also held by Aamoth); that the land was the primary fund for the payment of the indebtedness secured by such $850 mortgage and that all title or interest acquired by the plaintiff by virtue of the foreclosure of the third mortgage, the certificate of sale, and deed subsequently issued thereon, remained subject to the $850 mortgage and, hence, was cut off by the foreclosure thereof and the deed issued to the defendant Glen Broten upon the foreclosure of such second mortgage.

It is true that in the first instance the second mortgage, that is, the mortgage for $850, had priority over the mortgage under which plaintiff's title was obtained; but it is equally true that Aamoth, while the owner and holder of the liens created by both mortgages and the foreclosure proceedings had thereon, entered into a written agreement with Bjerken whereby he (Aamoth) expressly agreed that the third mortgage and the sheriff's certificate of sale issued thereon, should take priority over the second mortgage, and this agreement was duly recorded in the office of the register of deeds of the county in which the real property was situated long before the defendant Glen Broten acquired any interest therein. So far as the record on this appeal shows, whatever interest Glen Broten acquired as a purchaser at the sale upon the foreclosure of the second mortgage, was acquired with full notice of such agreement between Aamoth and Bjerken. There seems to be some contention on the part of the appellants that inasmuch as the land was the primary fund for the payment of the mortgage debt, the holder of the mortgages and the debts secured thereby was without authority to enter into any agreement changing the order of priority of the mortgages without obtaining the consent of the mortgagors to such agreement. This contention is clearly without merit and contrary to the overwhelming, if not the unanimous, weight of authority. The right of the holders of liens upon real estate to enter into agreement

to change the order of priority is in no manner affected by the land being deemed a primary fund for the payment of the debts secured by the liens. The land is the primary fund for the payment of all debts secured by such liens, the last as well as the first. And, of course, there is an obligation on the part of the mortgagor or debtor to pay the debts without regard to the security. In this case all debts were paid by proceeds received upon sales of the land. Ordinarily the only parties concerned with the order of priority of liens upon real estate are the holders of the liens, and the authorities are all agreed that "the legal order of priority as between mortgages and other liens or claims may be reversed or modified by an agreement of the parties or by a waiver or release on the part of the senior lienholder." 41 C. J. 524.

"We cannot see," said the Appellate Court of Illinois (Jackson v. Groser, 121 Ill. App. 363, 369), "how the rights of the makers of the notes or of the holder of the equity are disturbed by such an arrangement between the parties holding acknowledged superior mortgage rights over the property, by their agreement as to priority between themselves." See also 3 Jones, Mortg. 8th ed. § 2191; Federal Land Bank v. Steele, 59 N. D. 723, 231 N. W. 892.

At the time Aamoth executed and delivered the agreement to Bjerken, Aamoth was the absolute owner of both mortgages and of any and all rights and interests then existing as a result of the foreclosure proceedings had thereon. He could have released in whole or in part whatever interest or right he had under either mortgage, and he had an undoubted right, in the circumstances shown in this case, to agree with the purchaser of the certificate of foreclosure sale, issued upon the foreclosure of the third mortgage, that such certificate should have priority over the second mortgage, without obtaining the consent of the mortgagor to such agreement.

The certificate of mortgage foreclosure sale, the assignment of such certificate, and the agreement contained therein reversing the order of priority of the second and third mortgages, were instruments entitled to record, and, upon their being recorded, subsequent purchasers were charged with notice thereof. It was the duty of the register of deeds to keep not only a full and true record of such instruments, but also a numerical index of the various instruments recorded. Comp. Laws 1913, §§ 3330–3333. Presumptively this duty was fully per-

formed; and there is no claim in this case that it was not. Hence, the defendant Glen Broten purchased the premises at the sale held upon the foreclosure of the second mortgage with full notice of the fact that the owner of the lien created by that mortgage and the decree of foreclosure based thereon, had entered into a specific agreement that the same should be subsequent and subordinate to the certificate of foreclosure sale issued upon the foreclosure of the third mortgage. Upon the record presented here Glen Broten stands in no better position to deny the validity of this agreement than would Aamoth if he had become the purchaser, and subsequently had acquired sheriff's deed and was now asserting that the second mortgage had priority over the third mortgage notwithstanding the express agreement to the contrary.

(2) As regards the claim of Tillberg, that the first mortgage remains a valid lien upon the land notwithstanding the satisfaction thereof by the State Savings Bank, we are agreed that it cannot be sustained.

Under our statutes not only a mortgage but an assignment (Comp. Laws 1913, § 6742) and a satisfaction or discharge (Comp. Laws 1913, § 6748) are conveyances entitled to record (Comp. Laws 1913, § 5595).

The assignment of mortgage was a conveyance within the provisions of the recording act (Comp. Laws 1913, §§ 5594, 5595, 6742), and the failure of Tillberg to cause the same to be recorded rendered it void as against any subsequent purchaser in good faith and for a valuable consideration whose conveyance was first duly recorded. Henniges v. Paschke, 9 N. D. 489, 81 Am. St. Rep. 588, 84 N. W. 350; Holvick v. Black, 57 N. D. 270, 221 N. W. 75.

In October, 1926, the records showed the State Savings Bank to be the owner and holder of a certain mortgage upon the premises; and the State Savings Bank executed in due form a satisfaction of this mortgage, which satisfaction was recorded October 8, 1926. The sheriff's certificate of sale under the third mortgage was recorded February 8, 1927. It was assigned by Aamoth to Bjerken August 1, 1927, and such assignment was recorded August 25, 1927. Hence, when Bjerken acquired and placed of record an assignment of the sheriff's certificate of mortgage foreclosure sale containing the provision changing the priority between the second and third mortgages, he was fully

justified in believing, and presumptively acquired the certificate in the belief, that it was in fact and in law based upon the foreclosure of the first mortgage lien upon the premises. He had a right to rely upon the formal release of the mortgage which had been executed by the mortgagor showing that the debt had been fully paid and satisfied. Connecticut Mut. L. Ins. Co. v. Talbot, 113 Ind. 373, 3 Am. St. Rep. 655, 14 N. E. 586; 41 C. J. p. 814. See also Henniges v. Paschke, 9 N. D. 489, 81 Am. St. Rep. 588, 84 N. W. 350; Holvick v. Black, 57 N. D. 270, 221 N. W. 75.

It is claimed by the appellants that neither Bjerken nor Putnam were good faith purchasers for value, and that they were chargeable with notice of the alleged invalidity of the satisfaction of the mortgage. As regards this contention it is sufficient to say that no evidence whatever was adduced having any reasonable tendency to show that Bjerken and Putnam were not good faith purchasers for value. The presumption is, of course, that the transactions were such as the documents and the acts of the parties indicated. It is presumed that private transactions have been fair and regular; and that the ordinary course of business has been followed. Comp. Laws 1913, § 7936 (19–20). In this case there is no competent testimony having reasonable tendency to contradict these presumptions; but there is positive evidence on the part of the plaintiff tending to support them.

There is no basis in the evidence for the claim that the satisfaction of the mortgage was obtained from the State Savings Bank by any fraudulent practices on the part of Aamoth. The evidence bearing on this feature of the case is all to the contrary. Aamoth was one of the managing officers of the Security National Bank of Fargo, which held the third mortgage for $5,700. The records showed two outstanding prior mortgages; one held by the State Savings Bank of St. Paul, Minnesota, for $2,000; and one held by Tillberg for $850, under an assignment from the Midland National Bank of Minneapolis. On September 24, 1926, Aamoth wrote the State Savings Bank, calling attention to the mortgage held by the State Savings Bank and that the Security National Bank of Fargo had a subsequent mortgage upon the land and inquired whether the State Savings Bank would be willing to sell its mortgage and assign the note and mortgage to the Security

National Bank. To this letter the State Savings Bank replied on September 25th as follows:

"In answer to your favor of the 24th inst., regarding the John Broten loan on the SE¼ of Section 13–144–60, Griggs county, beg to say that this loan was paid November 15, 1924. We have no further interest in the same."

Thereupon, some further correspondence was had, and on October 6th, the State Savings Bank forwarded to the Security National Bank of Fargo, a duly executed satisfaction of mortgage which the latter bank at once caused to be placed of record.

On October 21, 1926, Tillberg executed an assignment of the $850 mortgage, assigning the same to Aamoth, and Aamoth paid therefor the full amount due on that mortgage. Tillberg testified that Aamoth saw him in regard to the mortgages on the Broten land some time during the month of September, 1926; that at this time he (Aamoth) sought to purchase both the first and second mortgage; that Tillberg stated he would not sell the first, but would let him know later about the second, mortgage; that subsequently he decided to sell the second mortgage, and that he executed the assignment on October 21, 1926. Aamoth denies that he ever had any conversation with Tillberg about the first mortgage. Furthermore he claims that he had no negotiations with Tillberg at all until after he had obtained and recorded the satisfaction of the mortgage executed by the State Savings Bank. The facts and circumstances in the case tend to corroborate Aamoth's version of this matter. At the conclusion of the trial, the trial judge expressed his opinion to the effect that Aamoth acted in good faith in obtaining the satisfaction of mortgage from the State Savings Bank, and that when he obtained the same he had no knowledge of the fact that Tillberg held an unrecorded assignment of such mortgage. This opinion is in accord with the preponderance of the evidence. Judgment affirmed.

BURKE, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.