[File No. 6845.]

THE STATE OF NORTH DAKOTA, Appellant, v. NORTH-WESTERN IMPROVEMENT COMPANY, a Foreign Corporation, Respondent.

(7 NW (2d) 724.)

Opinion filed January 26, 1943.

*Alvin C. Strutz,* Attorney General, and *C. E. Brace,* Assistant Attorney General, for appellant.

*Conmy & Conmy,* for respondent.

CHRISTIANSON, J. This is an action to determine adverse claims to a tract of land in Grant county in this state. In its complaint the plaintiff alleges that it is the owner of said tract, and that the defendant claims an interest therein adverse to the plaintiff. The defendant in its answer alleges that it is the owner of all minerals of any nature upon or in said land, including coal, iron, natural gas and oil. The trial court found that the plaintiff is the owner in fee of the tract of land in question, with the exception of minerals, and that the defendant is the owner of all minerals in or upon said land, including coal, iron, natural gas and oil. Judgment was entered accordingly and the plaintiff has appealed and demands a trial anew in this court.

The material and undisputed facts are substantially as follows: On April 14, 1910, and for a long term of years prior thereto, the defendant was the owner of the tract of land involved in this action.

On that day the defendant corporation entered into a written contract with one Behrenfeld for a sale to said Behrenfeld of certain lands, including the tract involved in this controversy. By the terms of the contract the defendant corporation, in consideration of the payment to it of a stipulated sum, agreed to sell to said Behrenfeld certain lands, including the tract involved in this controversy, "together with the hereditaments and appurtenances thereunto belonging; excepting and reserving unto the vendor its successors and assigns forever all minerals of any nature whatsoever including coal, iron, natural gas and oil, upon or in said land, together with the use of such of the surface as may be necessary for exploring for and mining or otherwise extracting and carrying away the same; but the vendor shall pay to the purchaser the market value at the time mining operations are commenced of such

portion of the surface as may be used for such operations, including any improvements thereon; the purchaser shall notwithstanding have at all times the right to mine and remove such reasonable quantity of coal as may be necessary for his own domestic use."

The purchaser, Behrenfeld, agreed to purchase the premises from the vendor and to pay therefor the sum stipulated; also to pay the taxes on the land and to break and cultivate certain portions thereof. The defendant corporation agreed that upon the performance by the purchaser of the agreements to be performed by him it would execute and deliver to him a deed of conveyance for the premises. The contract acknowledged payment to the vendor of a certain sum "at or before the execution" thereof, and provided that except as therein otherwise provided it should "bind and inure to the benefit of the respective heirs, representatives, successors and assigns of the parties." The purchaser, Behrenfeld, entered into possession of the premises under the contract. On September 9, 1910, Behrenfeld assigned the contract to one Nieter. Thereafter, on October 7, 1912, the defendant corporation executed and delivered to Nieter a deed for the premises in accordance with the terms of the contract.

The deed contained a provision,—identical in language with that contained in the contract and quoted above,—excepting from the deed and reserving unto the defendant, its successors and assigns forever, all minerals of any nature whatsoever, including coal, iron, natural gas and oil, upon or in said land. The plaintiff acquired title to the land by deed executed and delivered June 20, 1938, by one Hertz, who was the successor in interest by deed from and through said Nieter. None of the deeds in the chain of title from Nieter up to and including the deed to the plaintiff contained any mineral reservation whatsoever.

The defendant claims that it has an interest and estate in the land to the extent of the mineral deposits that were reserved in the contract, and in the deed which the defendant subsequently executed in accordance with the terms of such contract. The defendant asserts that it was the absolute owner in fee of the premises at the time it entered into the contract with Behrenfeld on April 14, 1910; that under the terms of such contract and under the terms of the deed which it exe-

cuted and delivered to Nieter on April 7, 1912, it did not convey all the title, interest and estate that it owned, but that it specifically reserved as its property, all minerals of any nature whatsoever upon or in said land, including coal, iron, natural gas and oil. The plaintiff contends, however, that the reservation contained in the deed from the defendant corporation to Nieter was wholly inoperative and that the deed which the defendant corporation executed and delivered to Nieter operated to convey all interest, right and title which the defendant had in the premises, including all minerals. Plaintiff's contention is predicated upon chapter 304, Laws 1911 (Comp. Laws 1913, §§ 5518, 5519), which was entitled "An Act to Aid Assessors in Valuing Coal Deposits Reserved to Grantors by providing that all deeds and transfers of real property, which reserves the coal deposits to the grantor shall contain a full description of the coal deposits, so reserved, its length, width and thickness."

The material provisions of the act read as follows:

1. "That all deeds and transfers of real property in this state that reserve to the grantor the coal or other deposits in said property shall contain an accurate description of the coal or other mineral deposits reserved to the grantor, its nature, length, width and thickness and the coal or other mineral deposits reserved to the grantor shall be limited to such description. Provided that the provision hereof shall not apply to state and school lands.

2. "Every deed and transfer of real property in this state that recites a reservation to the grantor of the coal deposits in said property, but which does not contain as accurate description of such deposits as required in section 1 of this act shall be construed to transfer to the grantee named in such deed, all right, title and interest to such property and all deposits of coal or other minerals imbedded therein, notwithstanding such attempted reservation."

The defendant asserts that the reservation in the deed executed by it to Nieter is fully effective and is in no manner impaired by said chapter 304, Laws 1911 for the reasons: (1) that before said chapter 304 was enacted, the defendant had entered into a valid contract for the sale of said land, with exception of mineral deposits therein, the ownership of which defendant reserved; that such contract oper-

ated as a transfer to the vendee and his assignee of all the land with the exception of such mineral deposits, the ownership of which was reserved by the defendant company; that the purchaser in such contract had entered into possession of the property which he had agreed to purchase and was the equitable owner thereof when said chapter 304 became effective, and that the defendant corporation merely retained the legal title in trust for the equitable owner; that said chapter 304 was not intended to be retroactive or to affect any transactions or transfers that had been made before the statute became effective; and (2) that if the said chapter 304 is applicable, it infringes upon the constitutional rights of the defendant corporation and is unconstitutional and void.

We are of the opinion that chapter 304, Laws 1911, was not intended to apply and does not apply to the contract and deed in question here. That statute did not purport to be retroactive. It operated prospectively only; Beulah Coal Min. Co. v. Heihn, 46 ND 646, 651; 180 NW 787, 789. It does not purport to require owners of land to make or file a declaration or statement showing the extent of mineral deposits to aid assessors in making valuations of the property; nor does it require that an owner of minerals that have been reserved in deeds or transfers formerly made make or file a statement or declaration, or otherwise furnish information as to the character and extent of mineral deposits so reserved to aid the assessors in fixing their value.

The statute speaks of "every deed and transfer of real property."

The word "transfer" as employed in this statute has reference to the instrument by which the owner of real property transfers to another an estate or interest in or to real property. Here there was a valid contract made on April 14, 1910, whereby certain definite obligations and rights were created. The vendee acquired definite rights as to a specified portion of the real estate described in the contract, and the vendor retained ownership of a portion of the land, which under then existing laws it clearly had a right to retain in the manner and to the extent that the contract provided. Comp. Laws 1913, § 5351; Beulah Coal Min. Co. v. Heihn, supra.

The vendees entered into possession of the premises and he and his assignee continue to have the right to possess and occupy the premises.

When the vendee was placed in possession of the premises after the execution and delivery of the contract and the payment of the initial payment therein stipulated, he became the equitable owner of the land conveyed by the contract, and the vendor held the legal title in trust for the purchaser and as security for the payment of the purchase price. Semmler v. Beulah Coal Min. Co. 48 ND 1011, 1015, 188 NW 310, 312; Salzer Lumber Co. v. Claflin, 16 ND 601, 113 NW 1036; Woodward v. McCollum, 16 ND 42, 111 NW 623; 2 Pomeroy, Equity Jurisprudence, 5th ed, § 368. The vendee acquired a mortgageable interest in the property, and a mortgage of his equitable interest would constitute a "conveyance" within the meaning of our recording act. Simonson v. Wenzel, 27 ND 638, 147 NW 804, LRA 1918C 780. See also Williams v. Corey, 21 ND 509, 131 NW 457, Ann Cas 1913B 731; Semmler v. Beulah Coal Min. Co. 48 ND 1011, 188 NW 310, 312, supra.

When the contract was executed and delivered, the initial payment prescribed by the contract made and the vendee placed in possession, there was a severance of the minerals from the surface. The vendor transferred to the vendee the equitable estate or title only to the surface, and retained full ownership of any and all mineral deposits; and obviously the vendee acquired no interest whatsoever in the mineral deposits. The severance was as effective as if the vendor had conveyed the mineral deposits to someone other than the vendee named in the contract, and had made the contract with the vendee subject to such conveyance of mineral deposits. When the vendee had completed the payments stipulated in the contract he became vested with the complete equitable title to the real property which the vendor had agreed to convey by deed upon full performance by the vendee, and thereafter the vendor had no substantial interest in such real property but merely held the naked legal title in trust for the vendee. Citizens State Bank v. Kenmare Nat. Bank, 48 ND 770, 186 NW 755; Foster v. Lowe, 131 Wis 54, 110 NW 829; Jessen v. Pingel, 65 ND 209, 257 NW 2. The vendee was entitled as a matter of right to a deed as stipulated in the contract, and could have compelled the vendor by appropriate action to execute and deliver such deed, if the vendor had refused to do so. Citizens State Bank v. Kenmare Nat. Bank, supra

But obviously the vendee was not entitled to have the vendor convey anything more than the property which the vendor had agreed to convey, and to which the vendee held equitable title under the contract. The rights and obligations of the parties stemmed from the contract made on April 14, 1910. That contract and the relations created by the parties thereunder immediately upon its execution and delivery operated to sever the surface land from the mineral deposits upon or in the land, and to transfer to the vendee the equitable ownership of the surface land, and to retain in the vendor full and absolute ownership of mineral deposits. The deed which the vendor executed and delivered on October 7, 1912, did not evidence any contract then negotiated between the parties; it was the fulfillment of an obligation under the contract that had been made on April 14, 1910, and operated merely to transfer the legal title, which the vendor held in trust, to the holder of the complete equitable title (Foster v. Lowe, 131 Wis at page 60, 110 NW at page 831), all in conformity with and by virtue of the contract made April 14, 1910.

Inasmuch as said chapter 304, Laws 1911, does not apply to the contract and deed in controversy, no question is presented as to the constitutionality of such law.

Judgment affirmed.

MORRIS, Ch. J., and BURKE, NUESSLE, and BURR, JJ., concur.