NORTHERN PACIFIC RAILWAY COMPANY, a corporation, Plaintiff and Respondent,

v.

ADVANCE REALTY COMPANY, a corporation et al., Joseph E. Gross, Susanna Gross, Shell Oil Company, a corporation, V. V. Bull, J. W. Harris, V. L. Jopling, Harold A. Wood, Trustee, Grady Jean, T. Craig Wright and Nattie E. Wright, Grady Jean, Trustee, James F. Weekes, Jr., J. P. Evans, Albert Oswald, G. W. Wallace, Dewey Daniell, Dave Black, Jacob Hieb, C. H. Hopkins, M. M. Hopkins, Harry H. Hunter, Gottlieb F. Werner, W. H. Skiff, Elizabeth Fuchs, Henry Fuchs, Frederick Fuchs, Martha Fuchs, also known as Martha Johnson, William Fuchs, Betty Lou Fuchs, Estell K. Healy, also known as Estelle K. Healy, The Security Land Company, a corporation, H. F. Hunter, Grant County, a municipal corporation, Archie Stewart, Goldie Stewart, Sacony-Vacuum Oil Company, Incorporated, Clarence L. Werner, William Besser, Sr., Gottlieb Werner, Kate A. Hopkins, United States of America, acting by and through the Administrator of the Farmers Home Administration, Uline Loan Company, John C. Dalk, Florence M. Dalk, O. F. Warren, Thomas W. Leach, White Eagle Oil Company, a corporation, White Eagle, Gerald Hostetler, Otillia Hostetler, Delbert A. Wells, Arlene Wells, Lario Oil & Gas Company, a corporation, T. W. MacKay, W. A. McDowell, Violet Fuchs, L. G. Johnson, United States Smelting, Refining and Mining Company, Lee Hoff, Jr., Sacony-Vacuum Oil Company, Incorporated, Esther Zacher, Harry R. Zacher, Reinhold Zacher, Emilie Zacher, J. J. Ryan, Gottlieb Zeller, Jesse Bruhn, Elizabeth Bruhn, The Federal Farm Mortgage Corporation, a corporation, The Federal Land Bank of St. Paul, a corporation, Placid Oil Company, a corporation, Erle C. Beede, State Treasurer as Trustee for the State of North Dakota of Bismarck, North Dakota, State Treasurer, Bismarck, North Dakota, Los Nietos Company, a corporation, L. P. Arnold, Attorney-in-Fact for Los Nietos Company, a corporation, and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants and Appellants.

No. 7535.

Supreme Court of North Dakota.

July 13, 1956.

As Modified on Denial of Rehearing Sept. 26, 1956.

Strutz, Jansonius & Fleck, Bismark, for appellants, V. L. Jopling, White Eagle, White Eagle Oil Co., John C. Dalk, Lee Hoff, Jr., Thomas W. Leach, Erle C. Beede, James F. Weekes, Jr., Joseph E. Gross, O. F. Warren, Placid Oil Co.

Emil A. Giese, Carson, for appellants, Joseph E. Gross, Susanna Gross, Placid Oil Co. and James F. Weekes, Jr.

Leslie H. Burgum, Atty. Gen., for appellant, State.

Robert A. Birdzell, Asst. Atty. Gen., for State Treasurer as Trustee for the State of North Dakota.

Torkelson & Morland, Bowman, for appellant Federal Farm Mortgage Corp., Robert J. Barry, Harold W. Lee and Stanley F. Casey, St. Paul, Minn., of counsel.

Conmy & Conmy, Fargo, for respondent.

GRIMSON, Judge.

This action is brought for the purpose of quieting title in plaintiff·to all minerals in or under the following described property located in the County of Grant, State of North Dakota:

"All of fractional Section Nineteen (19), in Township One Hundred Thirty-One (131) North, Range Eighty-four (84) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 628.88 acres, more or less.

"All of Section One (1) in Township One Hundred Thirty (130) North, Range Eighty-six (86) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres, more or less.

"All of Section Three (3) in Township One Hundred Thirty (130) North, Range Eighty-six (86) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres, more or less.

"All of Section Nine (9) in Township One Hundred Thirty (130) North, of Range Eighty-six (86), West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres.

"All of Section Seventeen (17) in Township One Hundred Thirty (130) North, Range Eighty-six (86), West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres.

"All of Section Nineteen (19) in Township One Hundred Thirty (130) North, Range Eighty-six (86) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 632.-32 acres.

"All of Section Thirty-three (33) in Township One Hundred Thirty-two (132) North, Range Eighty-six West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres, more or less.

"All of Section Thirteen (13) in Township One Hundred Thirty (130) North, Range Eighty-seven (87) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres, more or less.

"All of Section Fifteen (15), in Township One Hundred Thirty (130), North, Range Eighty-seven (87), West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres.

"All of Section Twenty-three (23), in Township One Hundred Thirty (130) North, of Range Eighty-seven (87), West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres, more or less.

"All of Section Twenty-five (25) in Township One Hundred Thirty (130) North, Range Eighty-seven (87) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres, more or less.

"All of Fractional Section Thirty-one (31) in Township One Hundred Thirty-two (132), North Range Eighty-seven (87) West of the Fifth Principal Meridian, in Grant County, North Dakota, containing 625.76 acres, more or less.

"All of Section Seven (7), in Township One Hundred Thirty-two (132), North, Range Eighty-eight (88) West of the Fifth Principal Meridian, Grant

County, North Dakota, containing 624.-68 acres, more or less.

"Lots One (1), Two (2), Three (3), Four (4) and the East Half of the Northwest Quarter (E½NW¼), The Northeast Quarter of the Southwest Quarter (NE¼SW¼), the Southeast Quarter of the Southwest Quarter (SE¼SW¼), and the East Half (E½) of Section Thirty-one (31), in Township One Hundred Thirty-two (132), North, Range Eighty-eight (88) West of the Fifth Principal Meridian, Grant County, North Dakota, containing 624.-08 acres, more or less.

"All of Section Thirty-five (35), in Township One Hundred Thirty-one (131), North of Range Eighty-nine (89), West of the Fifth Principal Meridian, Grant County, North Dakota, containing 640 acres."

The complaint is in statutory form asking that the defendants set forth their claims; that they be declared void and that title be quieted in the plaintiff.

Fourteen of the defendants made separate answers. They all make a general denial of plaintiff's claim of ownership and set up various defenses. Some make counterclaim that they own various interests in different portions of the lands and minerals involved; some claim to be innocent purchasers thereof, in good faith and for value.

Plaintiff replies denying all of these claims. The balance of the defendants defaulted. The court found for the plaintiff. Twelve defendants appeal and ask for trial de novo.

The record shows that all of these lands were originally granted by the United States to the Northern Pacific Railway Co. In 1903, for the purpose of handling sales of the land, the Railway Company organized the Northwestern Improvement Company of New Jersey to whom these lands were deeded for that purpose. On Feb. 18, 1914, the Northwestern Improvement Company

deeded the lands involved here to the Advance Realty Company. That deed was recorded on March 16, 1914, in Book 33, page 380, in Morton County Register of Deed's Office and thereafter, when a part of Morton County was organized as Grant County, it was then transcribed in Book 15 at page 320 in the Office of the Register of Deeds of Grant County. That deed as recorded included the following reservations:

"Excepting and reserving unto grantor, its successors or assigns, forever, all coal and iron, upon or in said land, together with the use of such of the surface as may be necessary for exploring for and mining or otherwise extracting and carrying away the same," for which the grantor was to pay grantee the value of said use at the time of mining operations.

The plaintiff, however, claims that there was an error in the recording of that deed and that the reservation in the original deed read as follows:

"Excepting and reserving unto the grantor, its successors and assigns, forever, all minerals of any nature whatsoever, including coal, iron, natural gas and oil upon or in said land, together with the use of such of the surface as may be necessary for exploring for and mining or otherwise extracting and carrying away the same; but the grantor, its successors or assigns shall pay to the grantee or to his heirs or assigns, the market value at the time mining operations are commenced of such portions of the surface as may be used for such operations, including any improvements thereon; the grantee, his heirs and assigns, shall notwithstanding have at all times the right to mine and remove such reasonable quantity of coal as may be necessary for his own domestic use."

In 1942 the Northwestern Improvement Company, a New Jersey corporation was dissolved and all of its properties were

transferred to Northwestern Improvement Company, a Delaware corporation. The stock in both corporations was held by the Northern Pacific Railway Company. Among the assets transferred was a deed of the Northwestern Improvement Company, a New Jersey corporation, dated Sept. 29, 1942, recorded in Book C, p. 211, conveying to the Delaware corporation "all minerals and mining rights heretofore excepted and reserved to itself, its successors and assigns by the party of the first part, in its conveyances" of the parcels of the land involved in this action.

On Dec. 9, 1953, a special deed was issued by the Northwestern Improvement Company, a Delaware corporation, to the Northern Pacific Railway Company, which deed was recorded January 7, 1954, in Book 163, p. 132, in the records of the Office of the Register of Deeds, Grant County, purporting to convey "all minerals of any nature whatsoever, including coal, iron, natural gas and oil," upon or in the premises here involved.

The plaintiff bases its title to the minerals upon this deed which it claims conveyed to it the minerals reserved to the vendor in the deed of Feb. 18, 1914, from the Northwestern Improvement Company, a New Jersey corporation, to the Advance Realty Company.

The first question to determine, therefore, is whether there was a mistake in the recording of that deed, and if so, what effect it had on the title to the lands and the successive holders. The original deed was lost and the plaintiff endeavored to prove the mistake by secondary evidence.

A Mr. Lewis E. Schwarm, the land commissioner of the Northwestern Improvement Company and of the Northern Pacific Railway Co., had worked in the land department since 1908 and testified as to the records kept by the Northwestern Improvement Company.

Among the records of the Northwestern Improvement Company, identified by the witness, were the photostatic copies of the price lists and terms and conditions of sale of lands when offered for sale to settlers and which included the lands in question, an application by one W. L. Richards for the purchase of some of those lands and an acceptance thereof, memorandum of sales, a Five Year Contract of Purchase with an assignment to Advance Realty Company. All those instruments contained a reservation of all minerals. Photostatic copies of records of land sales and of records of deeds also were introduced.

Mr. Schwarm also testified that the Northwestern Improvement Company kept an impression book of all deeds issued by it. A photostatic copy of the page of that impression book on which appears a reproduction of what the plaintiff claims to have been the deed of the Northwestern Improvement Company to the Advance Realty Company, dated Feb. 18, 1914, which describes the land in question, was received in evidence. Photostatic copies of the pages showing deeds to Andrea Schneider, dated August 27, 1918, and of a deed to George Kohne, dated Feb. 3, 1916, were also received in evidence. In those deeds appears the reservation of all minerals, heretofore quoted, in the grantor. Mr. Schwarm also produced a list of other sales shown by the impression book to have been made on form "DD" to some forty other buyers subsequent to 1914 containing the same reservation.

The witness testified that for convenience the Northwestern Improvement Company printed a series of form of deeds and that the Register of Deeds of Morton County had books printed containing the blank forms of deeds as issued by the Northwestern Improvement Company. The deed form marked "CC" reserved to the grantor only coal and iron. The form deed marked "DD" reserved all minerals to the grantor. That was the form claimed to have been used by the Northwestern Improvement Company in its transfer to the Advance Realty Company, but it was recorded by the

register of deeds in the book prepared for "CC" deeds.

The appellants claim that the court erred in admitting this evidence of the records of the Northwestern Improvement Co., in that it was not of such a nature as to show without possible doubt that an error had been committed. They admit that secondary evidence may be admitted when the original deed is lost but claim that this evidence is not sufficient to overcome the presumption that the register of deeds performed his duties correctly. 76 C.J.S., Records, § 32, p. 131. They point out that the impression copy of the deed in question was made before it was executed and that there was a possibility of a change in the deed after the impression was made but before it was executed.

The respondents, however, claim that business records were admissible under Section 31–0801 NDRC 1943, and cites Fargo Mercantile Co. v. Johnson, 47 N.D. 304, 181 N.W. 953, and Baldwin Piano Co. v. Wylie, 63 N.D. 216, 247 N.W. 397.

The Northwestern Improvement Company v. Norris, N.D., 74 N.W.2d 497, 499, was a case parallel to the one at issue and involved the same claimed error in the recording of a deed. Similar evidence of the business records of the Northwestern Improvement Co., was received in evidence in that case subject to the same objection as here made. After thorough consideration of the question this court concluded that there was no error in the admission of that evidence. We held that:

"Section 31–0801 NDRC 1943, is a statutory enactment of the uniform business records as evidence act designed to enlarge the operation of the business records exception to the hearsay evidence rule and should be liberally construed to that end. The sufficiency of the foundation to permit the admission of such evidence is primarily for the trial court and his ruling there-

on will not be reversed in the absence of a manifest abuse of discretion."

We said in the opinion:

"We have reached the conclusion that the trial court properly admitted in evidence the exhibits to which we have referred to show the contents of the deed issued by the Northwestern Improvement Company on May 6, 1913, conveying to John H. Krueger all of Section 15. We agree with the trial court that the evidence establishes that the original deed contained the provision heretofore quoted excepting and reserving to the grantor all minerals; that the deed was erroneously recorded in the office of the register of deeds in that the record shows only a reservation of coal and iron and that the original deed has been lost."

That is also the conclusion we have reached in the case at bar.

Even if the register of deeds made an error in recording the deed it is argued on behalf of the plaintiff that when the original deed was deposited in the office of the register of deeds it constituted constructive notice to subsequent purchasers. Section 47–1908 NDRC 1943, is cited in support thereof. That section provides that an instrument duly executed is deemed to be recorded when deposited in the office of the register of deeds. However, Section 47–1945 NDRC 1943, provides that the deposit and recording of such an instrument is constructive notice of such instrument. Both sections must be read together so that it is not only the deposit of the original instrument but the correct record thereof that constitutes constructive notice. The deed itself is constructive notice while it is in the register of deeds office. Patton on Titles, Sec. 39, p. 179. After the recording it is the actual record made by the register of deeds that constitutes such notice. We held in Northwestern Improvement Co. v. Norris, supra, that:

"When a deed is deposited with the register of deeds for recording, the instrument gives temporary constructive notice of its contents when so deposited and when the instrument is recorded the record for purposes of constructive notice relates back to the date of deposit and as of that time becomes constructive notice of the contents actually and correctly recorded."

The plaintiff-respondent then argue that the consequences of the failure of the recording officer to accurately record the deed should be visited upon those in whose interest the recording statutes were enacted— the subsequent purchasers and encumbrancers. He cites in support of that principle, Atlas Lumber Co. v. Canadian-American Mortgage Trust Co., 36 N.D. 39, 161 N.W. 604. In that case, however, the error was that the clerk filed a release of a mechanics lien against the wrong description. He also cites McHugh v. Haley, 61 N.D. 359, 237 N.W. 835. In that case the clerk of court made note in the numerical index that a deed covered certain lots, but failed to index a lease provision therein against certain other lots. The facts in those cases differ from those of the case at bar. In the first of those cases the error could have been discovered by examining other records in the clerk's office. In the McHugh case an observation of the premises would have put a purchaser on notice. The principles on which those cases were decided are not applicable under the facts in the instant case.

■■ When the Northwestern Improvement Company issued its deed to the Advance Realty Company, it severed the title to the minerals from the title to the surface. State v. Northwestern Improvement Co., 72 N.D. 393, 7 N.W.2d 724; Northwestern Improvement Co. v. Norris, supra. The title to the surface of the land was transferred to the Advance Realty Company. The right to the minerals was excepted and reserved in the vendor with the right to take them out of the land which was transferred.

Clearly the reservation in the deed in question affected the title to the real estate in question. It, therefore, came within the term "conveyance" as used in that Section, 47–1942.

Section 47–1942 NDRC 1943, provides:

"The term 'conveyance' as used in section 47–1941 shall include every instrument in writing by which any estate or interest in real property is *created,* aliened, mortgaged, or encumbered, or by *which the title to any real property may be affected,* except a will or power of attorney." (Emphasis supplied.)

In Northwestern Improvement Co. v. Norris, supra, we held that:

"An exception or reservation such as the one involved in this action affects the title to real estate and falls within the scope of this statutory definition of conveyance." Bradley v. Walker, 138 N.Y. 291, 33 N.E. 1079; Wayt v. Patee, 205 Cal. 46, 269 P. 660.

■ Generally the word "conveyance" as used in the recording acts includes all instruments affecting real estate. Potter v. Vernon, 129 Okl. 151, 264 P. 611, 614. In Putnam v. Broten, 60 N.D. 97, 232 N.W. 749, this court held that an agreement reversing the order of priority of second and third mortgages was a conveyance within the meaning of Section 5595 Comp.Laws 1913, Section 47–1942 NDRC 1943. In that case the satisfaction of a mortgage was also held to be a conveyance.

In Northwestern Improvement Co. v. Norris, N.D., 74 N.W.2d 497, 508, we held:

" 'Every conveyance of real estate not recorded as provided in Section 47–1907 shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether

in the form of a warranty deed, or deed of bargain and sale, or deed of quitclaim and release, of the form in common use or otherwise, first is recorded, * * *' [Section 47–1941 NDRC 1943.] * * * An exception or reservation such as the one involved in this action affects the title to real estate and falls within the scope of this statutory definition of . conveyance. *Bradley v. Walker*, 138 N.Y. 291, 33 N.E. 1079; *Wayt v. Patee*, 205 Cal. 46, 269 P. 660."

■ Section 47–1907 provides for the recording of instruments by the register of deeds. The deed from the Northwestern Improvement Company to the Advance Realty Company, including the reservation, had to be recorded to be valid against innocent purchasers.

The summary in Northwestern Improvement Co. v. Norris, supra, which involved the same situation with regard to the failure by the clerk to record an exception and reservation of title to the minerals as the case at bar, applies as well in the instant case:

"The argument that it was the duty of the grantee and not the grantor to record the deed and see that it was properly transcribed in the records is not tenable here. The deed operated as a conveyance to the grantor in that it affected an interest in real property which the grantor owned. As against an innocent purchaser the deed was void as to that interest unless that interest was shown of record. The plaintiff's grantor executed and issued the deed. It created the exception and reservation by which plaintiff now claims title to all of the minerals. We reach the conclusion that it was the duty of the grantor to protect its interest against any subsequent purchaser in good faith by making certain that the reservation and exception in the instrument which it had issued was properly recorded. The plaintiff's

grantor having failed to so protect its interest, it had no interest in the land in question other than in iron and coal to convey to the plaintiff which could be asserted against innocent purchasers."

Since the exception and reservation of all minerals except coal and iron in the deed given by the Northwestern Improvement Co., to the Advance Realty Company was not recorded that exception and reservation of minerals is void as to all innocent purchasers. The Advance Realty Company, however, was aware of that exception and reservation and took the deed subject to that exception and reservation, and should have sold those lands subject thereto. It appears in the evidence that some of the deeds by which the Advance Realty Company sold land to these defendants included an exception or reservation or a reference to the reservation made by the Northwestern Improvement Company. In such instances the defendants may not have been innocent purchasers and the title to the minerals may still be in the plaintiff. Other diversions of the title may have occurred. It will, therefore, be necessary to examine the course of the title to the lands from the Advance Realty Company deed to the deeds of the answering defendants to determine who has the title to the minerals in each case. Abstracts of title were introduced to show that.

We will first consider the title to Section 35, Township 131, Range 89, in which both the defendants, State Treasurer and Erle C. Beede claim an interest. The record shows that on Jan. 14, 1916, the Advance Realty Company, by warranty deed, recorded in Book 53, p. 91 of Morton County records, transcribed to Book 15, p. 419, Grant County records, transferred all of said land to C. N. Hopkins "subject to the usual Northwestern Improvement Company's oil and gas reservations.'

■ To constitute an innocent purchaser there must be a purchase, for value, in good faith, and without notice, actual

or constructive, of any outstanding claim. Burdg v. Scott, 111 Kan. 610, 208 P. 668, 673.

■ Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself. Section 1-0125 NDRC 1943.

The reservation above set forth was sufficient notice to the purchaser to put him upon inquiry. That notice showed that there existed a further reservation than the coal and iron reservation that appeared in the deed to his grantor as recorded. It referred to minerals, gas and oil reservations which were omitted in the recording of that deed. Hopkins, therefore, had constructive notice and could have found out the facts by inquiry of his grantor, the Advance Realty Company. It must be held that Hopkins and his successors in interest were not innocent purchasers but had sufficient notice to put them on inquiry. When they did not inquire they are deemed to have constructive notice of the reservations of title to the minerals by the Northwestern Improvement Company. Hopkins and his successors were, therefore, not innocent purchasers of the minerals.

On Dec. 1, 1915, C. M. Hopkins mortgaged the premises and other lands to Gold-Stabeck Loan & Credit Co. On Nov. 15, 1923, the Gold-Stabeck Loan & Credit Co., assigned the mortgage to W. A. McDowell. McDowell foreclosed on that mortgage and received the sheriff's certificate, dated March 1, 1924. Then McDowell assigned this sheriff's certificate to H. F. Hunter who received the sheriff's deed, dated Feb. 3, 1926, recorded in Book 79, p. 254, Grant County records.

■ The mortgage was therefore a lien only upon the surface of the land therein described and the sheriff's deed to that land granted only the interest that was included in the mortgage. The sher-

iff's deed, therefore, did not convey any minerals to Hunter.

Hunter gave a quitclaim deed to this property on Jan. 27, 1926, to W. A. McDowell, McDowell transferred the property to Erle C. Beede on September 9, 1930. E. C. Beede and his wife quitclaimed the property on November 30, 1936 to the State Treasurer as Trustee for the State of North Dakota and purchased it back on a contract for deed.

As regards this property, Section 35, Township 131, Range 89, the evidence shows that the right to all the minerals, gas and oil was reserved to the Northwestern Improvement Company and has since been transferred to the plaintiff. The State Treasurer, as Trustee for the State of North Dakota has title to the surface of the land subject to this contract with Beede.

We then come to Section 15, Township 130, Range 87. Defendant, John C. Dalk, claims to be the owner thereof subject to oil leases to defendants Thomas W. Leach, O. F. Warren, White Eagle, and White Eagle Oil Company.

The Advance Realty Company gave a warranty deed to the premises Jan. 14, 1916, to C. M. Hopkins, "subject to the usual Northwestern Improvement Company mineral, gas and oil reservation." Hopkins therefore had notice sufficient to put him on inquiry as to the reservation of the minerals. There is no evidence of inquiry by him. On July 1, 1916, Hopkins and wife transferred the property by warranty deed to the Security Land Company with the following reservations: "Excepting and reserving unto the grantor, its successors or assigns, all minerals, of every nature, whatsoever, including coal, iron, natural gas and oil upon or in said land. * * *"

By these reservations Hopkins only repeated and emphasized the reservation of the Northwestern Improvement Company. The Security Land Company, therefore, had notice of the exception and reservation.

It obtained only title to the surface of the land.

This land was included in the mortgage given by C. M. Hopkins on Dec. 1, 1915, which was finally foreclosed and sheriff's deed issued on Feb. 3, 1926 to H. F. Hunter. As heretofore stated neither Hopkins nor his successors in interest had title to the minerals, gas and oil so that the sheriff's deed to Hunter passed only the surface to the land. Several mesne transfers followed and John C. Dalk became the owner on January 2, 1931.

On May 5, 1953, John C. Dalk obtained a judgment quieting title in himself to all oil, gas and other minerals excepting coal and iron in and under Section 15, Township 130, Range 87. Neither the plaintiff nor either of the two Northwestern Improvement Companies were made parties to that action. The exception and reservation of coal and iron appears in the Northwestern Improvement Company's deed to the Advance Realty Company in their first deed. The deed from Advance Realty Company to Hopkins showed it was subject to the usual Northwestern Improvement Company's mineral, gas and oil reservation. The record showed also that on Sept. 29, 1942, the Northwestern Improvement Company, a New Jersey corporation, had by quitclaim deed, transferred the title to all minerals to the Northwestern Improvement Company, a Delaware corporation. Since their names appeared in the chain of title they could not be served as unknown defendants. Section 32–1706 ND RC 1943. Their interest in the minerals is therefore not affected by that judgment but is passed on to the plaintiff by the Northwestern Improvement Company's special deed of Dec. 9, 1953.

We conclude that the plaintiff is the owner of all the minerals under said land and that John C. Dalk is the owner of the surface but that he had no interest in the minerals, including coal, iron, gas and oil. The leases he has given thereon are ineffective.

We will now consider the title to Section 31, Township 132, Range 88, in which the Federal Farm Mortgage Corporation, and Joseph D. Boushans and Marie Boushans claim an interest. After the Advance Realty Company obtained title to this land from the Northwestern Improvement Company, it, by warranty deed, conveyed the E½ of Sec. 31, Township 132, Range 88 to W. A. McDowell on July 19, 1921, with no reservation regarding minerals. McDowell, by quitclaim deed on Jan. 20, 1930, conveyed his interest in said land to the Bondholders Bureau, Inc., with no reservations as to minerals. On Feb. 7, 1930, the Bondholders Bureau, Inc., conveyed said premises by warranty deed to Arthur Bruhn and Jesse Bruhn, with no reservations of title to the minerals. On Jan. 10, 1944, Jesse Bruhn and Elizabeth Bruhn, his wife, conveyed the premises by quitclaim deed to the Federal Farm Mortgage Company, with no reservations as to minerals. On Sept. 14, 1945, the Federal Farm Mortgage Company entered into a contract for deed with Joseph D. Boushans and Marie Boushans, his wife, for the sale to them of such premises reserving for a period of 25 years, 50 percent of all right and title to the minerals. It will be noticed that while there were no reservations of title in any minerals in any of these deeds, and no notice to purchasers of the Northwestern Improvement Company's reservation of all minerals, the original deed of the Northwestern Improvement Company to the Advance Realty Company as recorded, reserved the title to all coal and iron. That was on record so that all the subsequent purchasers bought subject thereto. Aside from that the Federal Farm Mortgage Company, as an innocent purchaser, owns the title and minerals, except coal and iron, subject to its contract with the Boushans. The plaintiff has title to the coal and iron only.

With regard to the West Half (W½) of Section 31, Township 132, Range 88, on which the Placid Oil Company claims an oil lease, the record shows that

on Oct. 2, 1917, the Advance Realty Company transferred said land to Joseph O. Hegge, by warranty deed, excepting and reserving all minerals including coal, iron, natural gas and oil. Hegge gave a mortgage on the said W½ of Sec. 31, Twp. 132, Range 88, and other lands, recorded Oct. 13, 1917, to the Federal Land Bank of St. Paul. In 1939, the Federal Land Bank foreclosed that mortgage and obtained a sheriff's deed. The mineral interests having been reserved by the Advance Realty Company, were not included in the mortgage of Hegge to the Federal Land Bank and consequently were not included in the sheriff's deed on the foreclosure of the mortgage. On May 15, 1943, the Federal Land Bank transferred the premises, W½, Sec. 31, Twp. 132, Range 88 and other lands to Jesse Bruhn, but as far as the W½-31-132-88 is concerned that deed did not include the minerals which had been reserved by the Advance Realty Company. The Federal Land Bank's attempt in the deed to Bruhn to reserve 50 percent of the minerals is ineffective since the bank had no right to the gas and oil. So also is the oil and gas lease of the Federal Land Bank to Placid Oil Company, dated Dec. 28, 1951, covering the W½ of Section 31, Township 132, Range 88.

Coming to Section 31, Township 132, Range 87, of which defendant, Lee Hoff, Jr., claims to be the owner, we find that on July 19, 1921, Advance Realty Company transferred to W. A. McDowell, all of that section without any reservations. By mesne transfers without any reservations of minerals, Lee Hoff, Jr., obtained title March 14, 1936, subject only to the reservation of coal and iron appearing in the Advance Realty Company's deed as recorded. The plaintiff has no interest in the minerals of that section except coal and iron.

We will next consider Section 1, Township 130, Range 86 of which the defendant, James F. Weekes, Jr., claims to be the owner. To this land Advance Realty Company gave two warranty deeds to Charles F. Chalsma, both dated and acknowledged on July 22, 1916. One was filed July 19, 1916 at 9:00 a. m. and recorded in Book 53, p. 97, Morton County Records, transcribed to Book 32, p. 343, Grant County Records. That deed contained no exceptions or reservations. The other deed was filed Sept. 23, 1916, at 9:00 a. m., recorded in Book 53, p. 143, Morton County Records, transcribed to Book 15, p. 427, Grant County records. That deed contains a clause, "Excepting and reserving unto Northwestern Improvement Company, its successors or assigns, all minerals of any nature whatsoever, including coal, iron, natural gas and oil upon or in said land. * * *"

The first deed containing no reservations would pass title to the minerals and oil to Chalsma before the second one was delivered and recorded. There is no explanation of why the second deed was issued. However, on August 15, 1916, Chalsma gave a warranty deed to P. J. Beltz and in that deed included a mineral reservation in the same words as used in the second deed to him. It looks, therefore, as if he had recognized the reservation of Northwestern Improvement Company in the second deed. At any rate that reservation in the deed was sufficient to put subsequent purchasers on notice and not having made inquiry they are bound thereby.

On May 12, 1938, Grant County took tax deeds to the premises and granted a county deed to James F. Weekes, Jr., to all of Section 1, Township 130, Range 86. This deed was based on the taxes assessed on the premises for the years 1931 to 1938, which was subsequent to the reservations of the minerals made by Chalsma in his deed dated August 15, 1916. That reservation caused a severance of the title to the minerals from the title to the surface. State v. Northwestern Improvement Co., 72 N.D. 393, 7 N.W.2d 724; Northwestern Improvement Co. v. Norris, N.D., 74 N.W. 2d 497.

■■■■ The assessment of land is based upon the value of the property included in the assessment at the time of assessment. Section 57–0227 NDRC 1943. The tax deed is based upon that assessment as shown by the tax certificate and passes title to the property as it was at the time the assessment was made. Conlin v. Metzger, 77 N.D. 620, 44 N.W.2d 617. A tax deed based upon tax proceedings in which the property is described by its government description, when the mineral interests have been severed, covers only the surface of the land. Washburn v. Gregory Co., 125 Minn. 491, 147 N.W. 706, L.R.A.1916D, 304. In the case at bar the assessment on which the title is based was made after the minerals therein were severed from the surface. The county deed to James F. Weekes, Jr., therefore, passed only title to the surface of the land.

■■ On May 26, 1953, James F. Weekes, Jr., obtained a judgment quieting title in the premises to him. Grant County was named as a defendant. That confirms the tax sale proceedings. Neither of the Northwestern Improvement Companies nor the Advance Realty Company were made parties. Their interests are, therefore, not affected. James F. Weekes, Jr., is the owner of the surface only of that land. His oil and gas lease to J. P. Evans is ineffective. Weekes had no interest in the oil and gas.

■■■ We will next consider Section 19, Township 131, Range 84, of which the defendants, Joseph E. Gross and Susanna Gross claim to be the owners, and defendant, V. L. Jopling claims to have an oil and gas lease for 1/16th. interest therein. The record shows that the Advance Realty Company transferred this land on April 4, 1922, to W. A. McDowell by warranty deed with no reservations as to minerals. On Sept. 11, 1924, McDowell quitclaimed to Frank C. Edwards. On May 12, 1938, Grant County obtained tax deeds to all of Section 19, Township 131, Range 84, based on the 1930 taxes. There had been no

severance of the title to the minerals from the title to the surface in this land, except as to iron and coal reserved in the deed from Northwestern Improvement Company to Advance Realty Company as recorded. Section 57–0227 NDRC 1943, provides:

"All property subject to taxation based on the value thereof shall be assessed at its true and full value in money. * * * In valuing any real property upon which there is a coal or other mine, or stone or other quarry, the same shall be valued at such a price as such property, including the mine or quarry, would sell for at a fair, voluntary sale for cash."

While this last sentence does not refer to oil and gas, yet it is clearly the intention of the legislature that all minerals in any particular property, when not severed, should be included in the general assessment of that property. We hold, therefore, that the general assessment covered both this surface and any minerals in the property except coal and iron, reserved in the original deed of the Northwestern Improvement Company to the Advance Realty Company as recorded.

It thus appears that in this instance the Advance Realty Company made no reservation of minerals for the Northwestern Improvement Company. Further Gross obtained a county deed, "subject to existing county road" based on a tax deed to Grant County on Nov. 7, 1945, which conveyed to him all the interest in the land except coal and iron. Joseph E. Gross and Susanna Gross, his wife, are the owners of the land in question subject to the oil and gas leases and mineral deeds which they have granted to V. L. Jopling and others.

Some of the defendants have pleaded in their answers the Marketable Record Title Act, Chapter 47–19A, 1953 Supp. NDRC 1943, and claim that even if the plaintiff has some claim regarding the ownership of the minerals in these lands on account of its unrecorded reservation of title it is

barred from asserting those claims against the defendants now, more than 31 years after such unrecorded reservations of title. Section 47–19A01 of that act provides:

"Any person having the legal capacity to own real estate in this state, who has an unbroken chain of title to any interest in real estate by himself and his immediate or remote grantors under a deed of conveyance which has been recorded for a period of thirty years or longer, and is in possession of such real estate, shall be deemed to have a marketable record title to such interest, subject only to such claims thereto and defects of title as are not extinguished or barred by the application of the provisions of this Act (chapter), instruments which have been recorded less than thirty years, and any encumbrances of record not barred by the statute of limitations."

 In order to come under the protection of this act one who claims an interest in real estate must have two qualifications. He must have an unbroken chain of title of record and he must be in possession of the interest which he claims. As heretofore shown all but three of the defendants, who have answered, and their immediate and remote grantors had notice of the reservation of all minerals by the Northwestern Improvement Company. As to minerals claimed by these defendants the title to them was severed from the title to the surface by the reservation. Beulah Coal Mining Co. v. Heihn, 46 N.D. 646, 180 N.W. 787. By severance separate estates are created and each is incapable of possession by the mere occupancy of the other. All that these defendants obtained was title to the surface which did not in any way give them possession of the minerals. The presumption that one having possession of the surface has also possession of the subsoil does not exist where the surface and subsoil right have been severed. 38 Am.Jur., Mines and Minerals, Section 37, p. 308. See also 2 Thornton

Oil and Gas, Willis, 5th Ed. Section 464, p. 777, 58 CJS., Mines and Minerals, Section 135 B; 1 A, Summers Oil and Gas, Permanent Ed. Section 138, p. 306; Dixon v. Kaufman, 79 N.D. 633, 58 N.W.2d 797. It is not shown that any of such defendants exercised any dominion over or possession of the minerals separate and apart from the surface estate. Thus we reach the conclusion that such defendants are not now in possession of any interest in the minerals in the lands involved. Therefore, the Marketable Record Title Act is not applicable to and has no effect upon the title to the minerals in question.

 We have found that three of the defendants remote grantors were innocent purchasers and had no knowledge of any mineral reservation except coal and iron which was reserved in their original title and of which they never had possession. They, therefore, obtained title to the oil and gas and need not claim the marketable record title act for their protection.

As the Marketable Record Title Act is not applicable to the facts in this case it is not necesary for us to pass upon the constitutionality thereof which is questioned by the plaintiff.

The examination of the record title of the lands involved in this action discloses that there was a notice of the reservation of all minerals in behalf of the Northwestern Improvement Company in the deeds given by the Advance Realty Company to the following described lands:

Section 15, Township 130, Range 87;

Section 35, Township 131, Range 89;

W½ of Section 31, Township 132, Range 88, and

Section 1, Township 130, Range 86.

The plaintiff, therefore, is entitled to a judgment quieting its title as to all minerals, including coal, iron, natural gas and oil in and under such lands.

The plaintiff is also entitled to a judgment quieting its title to the coal and iron under Section 31 in Township 132, Range 87; Section 19, Township 131, Range 84, and the E½ of Section 31, in Township 132, Range 88 because the Advance Realty Company sold those premises without making any reservation but the coal and iron which appeared in the record title.

The Federal Farm Mortgage Corporation is entitled to a judgment quieting its title to the E½ of Section 31, Township 132, Range 88, excluding only coal and iron which was reserved in the recorded deed to the Advance Realty Company, but subject to its contract of sale to Joseph D. Boushans and Marie Boushans.

Lee Hoff, Jr., is entitled to a judgment quieting his title to Section 31, Township 132, Range 87; excepting only coal and iron, reserved in the original recorded deed from the Northwestern Improvement Company to Advance Realty Company.

John C. Dalk is entitled to judgment quieting his title to the surface of Section 15—Township 130, Range 87. The oil leases he has given to defendants, Thomas W. Leach, O. F. Warren, White Eagle, and White Eagle Company, are ineffective as Dalk had no right to the minerals.

Jesse Bruhn is entitled to judgment quieting his title to the surface only of the W½ of Section 31, Township 132, Range 88. The Federal Land Bank's attempt in the deed to Bruhn to reserve 50 percent of the minerals is ineffective since the bank had no right to the minerals. So also is the oil lease the bank gave to the Placid Oil Company for the same reason.

James F. Weekes, Jr., is entitled to a judgment quieting his title to the surface only of Section 1, Township 130, Range 86.

Joseph E. Gross and Susanna Gross are entitled to a judgment quieting title to Section 19, Township 131, Range 84 because they derived their title to a tax deed subject only to existing county road and the reservation of coal and iron.

The State Treasurer, as Trustee of the State of North Dakota is entitled to a judgment quieting his title to the surface of Section 35, Township 131, Range 89, subject to his contract for deed to Beede because his purchase was made subject to the reservation of the minerals by the Northwestern Improvement Company.

The judgment appealed from is modified and the case is remanded to the district court for entry of judgment conformable to this opinion.

BURKE, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.