HORNSBY, Chief Justice.
On July 9, 1986, Colonial Bank-Gulf Coast Region, f/d/b/a Farmers & Merchants Bank (“Colonial”), and Baldwin County Savings & Loan Association (“Baldwin”), sued Stuart F. Graydon, Sr., Grayco Land, Inc., and Ike W. Thrash because of a default in payment on a promissory note (the other signatories on the promissory note had filed bankruptcy petitions prior to the filing of this suit). Colonial and Baldwin also sought an order that would allow them to foreclose on the real estate mortgage held as security for the debt.
The case was tried on December 2, 1987, and on December 4, 1987, the trial court ruled in favor of Colonial and Baldwin and allowed them 30 days to present evidence concerning the amount due on the debt and an appropriate attorney fee.
On February 1, 1988, the trial court ordered that the foreclosure should proceed. The foreclosure sale was conducted, and on February 15, 1988, the trial court determined that Colonial and Baldwin were entitled to a judgment in the amount of $1,263,-191.59. Graydon was given a credit in the amount of $60,000 for release fees, a $67,-253.68 payment from the bankruptcy proceeding of Arthur Martin, Jr., and $259,920 of the proceeds from the judicial sale. Graydon was left with a balance of $856,-017.91, a per diem liability in the amount of $270.92 from the date of judgment, March 4, 1988, and liability for a $20,000 attorney fee. Graydon’s motion to alter, amend, or vacate the judgment was denied on June 12, 1991. Graydon appeals.
Graydon (owner of Grayco Land Company, Inc.), Thrash, Arthur M. Martin, Jr., James A. McElroy, and J. A1 McElroy, Jr., borrowed $1,100,000 from Colonial to purchase real estate for a condominium development in Baldwin County, Alabama. On August 26, 1983, Graydon, Thrash, Martin, James A. McElroy, and J. A1 McElroy, Jr., executed a promissory note wherein they promised to pay Colonial $1,100,000 plus interest. Graydon (as owner of Grayco Land), Thrash, Martin, Jr., James A. McEl-roy, and J. A1 McElroy, Jr., executed a first mortgage on real estate located in Baldwin County, Alabama, as security for the promissory note. The mortgage agreement contained the following provision:
“The undersigned parties agree that in the event of submission to condominium form of ownership, said property shall secure the indebtedness referred to herein. However, upon the sale of individual units of the proposed condominium project, release of lien may be given for said units as they are sold by the mortgagee.”
On August 26, 1983, Colonial entered into a participation agreement with Bald *1347 win. Pursuant to the agreement, Colonial sold Baldwin an undivided 75% interest in the $1,100,000 note. In consideration for the agreement, Baldwin paid Colonial $825,000. Colonial maintained a 25% interest in the note. Graydon, Thrash, Martin, James A. McElroy, and J. A1 McElroy, Jr., made their last payment on the loan on September 11, 1984.
Sometime before September 1984, Gray-co Land Company (Stuart Graydon’s company), sold a portion of the real estate covered by the mortgage to Gulf Orleans Development (“Gulf Orleans”) and Arthur Martin, Jr. Although the record contains few details of this transaction, there is no indication that any party received less than fair value or did not bargain at arm’s length. Gulf Orleans and Martin obtained a $374,000 loan from Baldwin in order to construct eight condominiums on the portion of the property they purchased from Grayco Land. The $374,000 was used solely for the construction of the condominiums. As security for the loan, Gulf Orleans and Martin gave Baldwin a second mortgage on the property.
On January 13, 1986, Baldwin and Colonial entered into a subordination agreement whereby Colonial agreed to a partial subordination of its first mortgage in the amount of $374,000 to Baldwin’s second mortgage. The subordination agreement contained the following provisions:
“2. F & M [Colonial] hereby agrees that the security interest and lien of S & L [Baldwin] in the property subject to the S & L [Baldwin] Mortgage shall have priority to the extent of the S & L [Baldwin] Indebtedness over any security interest or lien F & M [Colonial] may now have or hereafter acquire in the property subject to the S & L [Baldwin] Mortgage; provided, however, that the priorities established hereby in favor of S & L [Baldwin] shall apply only to such S & L [Baldwin] Indebtedness as exceeds the first SIXTY THOUSAND AND NO/100 DOLLARS ($60,000.00) of the F & M [Colonial] Indebtedness. The parties specifically agree that F & M [Colonial] shall have a first priority for the first $60,000.00 of the F & M [Colonial] Indebtedness and that any and all F & M [Colonial] Indebtedness in excess of said sum shall be secondary and subordinate to the S & L [Baldwin] Indebtedness.
[[Image here]]
“5. F & M [Colonial] agrees that it will execute and deliver a Partial Release of the F & M [Colonial] Mortgage upon any sale of a unit in the condominium located upon the property subject to the S & L [Baldwin] Mortgage and the remittance to F & M [Baldwin] of $7,500.00 of the proceeds derived from the sale of such condominium unit; such Partial Release to be in form and substance satisfactory to S & L [Baldwin] and shall release in full any such unit from the terms and provisions of the F & M [Colonial] Mortgage.
It is the intention and agreement of S & L [Baldwin] and F & M [Colonial] that as to each $7,500.00 of value received by F & M [Colonial], whether directly or indirectly, in connection with the sale, foreclosure or other transfer of all or part of the property subject to the S & L [Baldwin] Mortgage, F & M [Colonial] will release a condominium unit located upon the subject property from the lien of the F & M [Colonial] Mortgage. It is further specifically agreed that all of the property subject to the S & L [Baldwin] Mortgage upon receipt by F & M [Colonial] of the aggregate sum of $60,000.00 in connection with the sale, foreclosure or other transfer of any condominium unit, or combination of units, regardless of whether all condominium units located upon the property subject to the S & L [Baldwin] Mortgage shall have been sold, foreclosed upon or otherwise transferred and F & M [Colonial] hereby specifically agrees to execute such full Release, in form and substance satisfactory to S & L [Baldwin], upon receipt of said sum.”
Both the mortgage held by Colonial and Baldwin on the real estate and the mortgage held by Baldwin on the condominiums went into default. Martin filed a bankruptcy petition on February 13, 1985. The mortgage was foreclosed as to the entire property, and the property was sold on March 4, 1988. A total of $559,920 was *1348 received for the property at the foreclosure sale, $300,000 of that representing the amount received from the sale of the condominiums. Of the $559,920 sale price, Colonial credited $259,920 toward the first mortgage. Of the $300,000 remaining, Colonial applied $60,000 to the first mortgage, pursuant to the release fee provision in the subordination agreement, and $240,000 was credited toward the second mortgage.
In addition to the amount received for the property at the foreclosure sale, $92,-763.70 was received into the court from Martin’s bankruptcy proceeding. Of the $92,763.70 received, $67,253.68 was applied to the first mortgage, and the balance was applied to the second mortgage on a pro rata basis. Graydon sued Colonial and Baldwin, contending that because he was not a party to the second mortgage, he should have received full credit for the sale price ($559,920), and full credit for the Martin payment ($92,763.70).
After reviewing the agreements between the parties and hearing ore tenus testimony, the trial court entered the following order on February 15, 1990:
“Plaintiffs are entitled to a judgment against Defendants, Graydon and Thrash as of March 3, 1988, in the following amounts:
“3-3-88- Principal Balance- $946,139.48
Interest (through-3-3-88) 317,052.11
“TOTAL: $1,263,191.59
“Credits: Release Fee-60,000.00
Martin Payment-67,253.68
Bid-in- Total Credits-259,920.00
“Balance Due- $876,017.91
“Per Diem from 3-4-88 at 11.90% 285.61
“Attorneys’ Fees and expenses 20,000.00
“It is therefore ordered ... that plaintiffs] are awarded a judgment against Defendants Stuart F. Graydon, Sr. and Ike W. Thrash in the following amounts:
“Principal 876,017.91
“Interest (Satisfied by adjustments).
“Per Diem 270.92
commencing on March 4, 1988 “Attorneys’ Fees and expenses 20,000.00”
Graydon argues that the trial court erred when it credited the proceeds from the foreclosure sale and Martin’s bankruptcy to the second mortgage. The issue in this case is whether the evidence was sufficient to support the trial court’s conclusions.
The court tried this case without a jury. Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v. Ames, 514 So.2d 877, 878 (Ala.1987); Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc., 392 So.2d 1177 (Ala.1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Gaston, supra; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978).
PROCEEDS FROM THE JUDICIAL SALE
According to Oakes v. Michigan Oil Co., 476 So.2d 618, 622 (Ala.1985), “ ‘[t]he legal order of priority as between mortgages and other liens or claims may be fixed, reversed, or modified by an agreement of the parties or by a waiver or release on the part of the senior lienholder.’ ” (Quoting 59 C.J.S. Mortgages § 229, pp. 296-97 (1949), emphasis added in Oakes.) Graydon maintains that because he did not sign the second mortgage and was not a party to the subordination agreement between Colonial and Baldwin, the proceeds from the foreclosure sale should not have been applied in accordance with the subordination agreement. We note, first, that “consent of the mortgagor is unnecessary to effect a change in the order of priority as between a mortgagee and the holder of any other outstanding interest in the property, such as another mortgagee, a lessee, or a lienholder.” Oakes v. Michigan Oil Co., supra, at 622 (citations omitted). Second, we note that Grayco Land (Graydon’s company) sold the property that is the sub *1349 ject of the second mortgage to Gulf Orleans and Martin.
Further, “It is well settled in Alabama that proceeds from the sale of mortgaged property must be applied to the debt secured by the property.” Muscle Shoals National Bank v. Hallmark, 399 So.2d 297, 298 (Ala.1981); Boyd v. Jones, 96 Ala. 305, 308, 11 So. 405, 405 (1892). The sale price at the foreclosure sale was $559,920. Of that $559,920 received, $300,000 was obtained from the sale of the condominiums. The second mortgage covered the condominiums. Colonial applied $240,000 ($300,000 minus the $60,000 release fee) toward the second mortgage.
Finally, the record supports the inference that Graydon received fair value for the property on which the condominiums were developed. Once Graydon conveyed his interest in the developed property, he had no interest to assert with respect to Baldwin’s subordination as to that property. Further, the record contains evidence that Graydon benefited from the sale of the condominium. Mr. Sledge, one of the attorneys for the banks, testified:
“Equitably it does not work to his [Gray-don’s] detriment anyway because the value that he realized vis-á-vis the seventy-five hundred dollars per unit that was applied to the first mortgage was in excess of what he would have realized had the bank not built or financed the construction of the eight condominium units. If you look at the — if you look at this item here, you got forty feet by a hundred and four feet under roof of the condo units. And that’s about four thousand square feet which, in the case of the application of the proceeds to Mr. Gray-don, sixty thousand dollars generated for him, about fifteen dollars a square foot, which was more than the two to five dollars a square foot that the property ever appraised for. So equitably Mr. Graydon has not suffered economically at all. He has benefited by virtue of the construction of these units to the extent of sixty thousand dollars for the eight units. It would be inequitable to allow Mr. Graydon to benefit from loan proceeds that were not made to him or for him or for his benefit, but to construct condominium units on property which, as Mr. Wynne acknowledges, Mr. Graydon didn’t even own.”
Under the particular facts of this case, the trial court’s determination that Graydon was not entitled to a credit for the proceeds obtained from the sale of the property on which the condominiums were developed was not clearly erroneous.
BANKRUPTCY PROCEEDS
Graydon argues that the proceeds from Martin’s bankruptcy proceeding should have been applied only to the first mortgage. Graydon does not provide any legal support for this allegation. The trustee in bankruptcy made a payment in the amount of $92,763.70 to Colonial Bank. Once the bank received those proceeds, it applied them pro rata to each mortgage, $67,253.68 to the first mortgage and the remainder to the second mortgage. Because Martin was a signatory on both the first mortgage and the second mortgage, and because both mortgages were in default, the bank had a right to credit both debts. The trial court’s pro rata application of the proceeds from the bankruptcy proceeding to each mortgage was not clearly erroneous under these facts.
The evidence of the underlying facts of the transactions involved in this case was presented to the trial court ore tenus. Our review of the record before us discloses no indication of clear error in the trial court’s resolution of this case. Accordingly, the judgment below is due to be affirmed.
AFFIRMED.
ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.