MURDOCK, Judge,
concurring in the result.
In contrast to the view expressed in the dissenting opinion, I cannot construe the portion of the guaranty agreements relied upon in that dissenting opinion as applicable to this case. That provision makes it clear that the guarantor does not grant the lender the power to “increase the principal amount” of the guaranteed debt. I agree with the main opinion that that is not what has been done in this case.
However, I cannot fully agree with all of the reasoning in the main opinion. Among other things, that opinion relies upon the principle that the “ ‘consent of the mortgagor is unnecessary to effect a change in the order of priority as between a mortgagee and the holder of any other outstanding interest in the property, such as another mortgagee, a lessee, or a lienholder.’ ” 936 So.2d at 527 (quoting Oakes v. Michigan Oil Co., 476 So.2d 618, 622 (Ala.1985)). While this principle may be true enough, I do not see that it has any bearing on the outcome of the present case. It *528 is not as mortgagors that the Russells (who conveyed their ownership interest in the subject real property to Grantham and Elba Cash & Carry, and did not hold the status of mortgagor at the time the SBA agreed to subordinate its interest as mortgagee of that real property) and Wambles (who never was a mortgagor) were allegedly injured by the SBA’s agreement to subordinate their mortgage in the real property. Instead, it is in their capacity as guarantors that the Russells and Wam-bles have suffered injury, under the theory they assert. Their asserted injury does not derive from a diminution in some interest in mortgaged real property due to Covington County Bank having a right to foreclose on that real property ahead of LPP (the SBA’s successor in interest), rather than vice versa. Instead, the injury, if any, both to the Russells and to Wambles would derive from the fact that, as guarantors, they have been called upon to pay more to LPP than they would have been called upon to pay if the real property had been available to LPP under a “first mortgage” and LPP had chosen to collect all or part of the subject debt by foreclosing on that real property.
I concur in the result reached by the main opinion because the claims of the Russells and Wambles are very simply and straightforwardly met by the following provisions of the guaranty agreements that the Russells and Wambles signed and that define the nature of their guaranty obligation:
“The Undersigned waives any notice of the incurring by the Debtor at any time of any of the Liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:
[[Image here]]
“(b) To enter into any agreement or forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement;
[[Image here]]
“(d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by Lender;
[[Image here]]
“In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the Undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the Undersigned. Lender shall not be required, prior to any such demand on, or payment by, the Undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or *529 remedies with respect to any part of the collateral.”
THOMPSON and PITTMAN, JJ., concur.